**ITT SEMICONDUCTORS, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 80–9–01521.**

United States Court of
International Trade.

Nov. 3, 1983.

Barnes, Richardson & Colburn, New York City (Rufus Jarman, New York City, on the motion), for plaintiff.

J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, New York City (Deborah Rand, New York City, on the motion), for defendant.

MEMORANDUM

CARMAN, Judge:

This matter is before me on the parties' cross-motions for summary judgment and defendant's alternative motion to dismiss.

Plaintiff commenced this suit to recover the sum of $48,153.04 which was paid to the defendant as part of an overall settlement of a penalty action. Plaintiff filed a protest with respect to the payment of this sum and it was denied as being a decision that was not protestable. Defendant moves to dismiss arguing that since the decision as to which the protest was filed was not a protestable decision pursuant to 19 U.S.C. § 1514 (1976 & Supp. IV 1980), this court lacks subject matter jurisdiction in this matter. After a recitation of the background facts, as alleged by the plaintiff, this threshold jurisdictional question will be addressed.

Plaintiff is the importer of record of numerous entries of transistors exported from Portugal and other countries which entered into the United States during the years 1969 through 1974. Approximately sixty-two of these entries imported in 1969 and 1970 are the subject of this suit. These transistors were manufactured using

certain U.S. components called "dice," for which plaintiff claimed and was granted an allowance of duty under TSUS item 807.00. An amended prepenalty notice was issued to ITT Semiconductors ("ITT") by the United States on June 9, 1976, advising that the United States was contemplating the assessment of penalties in the amount of $60,470,322.00. The notice covered 805 consumption entries filed between July 23, 1969 and November 15, 1974.

The notice alleged that foreign assemblers had commingled foreign and domestic components in the manufacture of the transistors making such components ineligible for duty allowance under TSUS item 807.-00, and that, regardless of the country of origin, dice components were not entitled to item 807.00 treatment because they were separated after importation by the "scribe and break" technique. The notice alleged that by claiming an item 807.00 allowance for dice components under such circumstances, plaintiff had violated the provisions of 19 U.S.C. § 1592. Other allegations appeared in the notice relating to entries not covered by this litigation. The Customs Service subsequently issued a Notice of Penalty in the amount of $12,-649.099.00. The notice reflected the deletion of a considerable number of entries based upon a decision in *United States v. Texas Instruments Inc.*, 64 CCPA 24, C.A.D. 1178, 545 F.2d 739 (1976). An amended Notice of Penalty dated March 21, 1978 reduced the amount to $10,118,474.00.

On July 7, 1978, plaintiff filed a Petition for Mitigation pursuant to 19 U.S.C. § 1618[1] and in this petition addressed the inclusion of the entries that are the subject of this action. Plaintiff believes that these entries had been included in the prepenalty and penalty notices because of the discredited position of the Customs Service that an allowance under item 807.00 could not be made for the U.S. components subject to a "scribe and break" separation. The intervening decision in *United States v. Texas Instruments, supra,* determined that such separation did not disqualify the U.S. components from receiving an allowance of duty under item 807.00.

On April 18, 1979, the Customs Service responded to plaintiff's Petition for Mitigation, and noting the *Texas Instruments* decision changed its position that an item 807.00 claim could not have been allowed on the subject entries. The Customs Service, however, requested payment of "withheld duties" for the subject entries in the amount of $48,153.04.

Plaintiff filed its First Supplemental Petition for Mitigation on September 13, 1979, arguing that since the Customs Service had concluded that plaintiff had reasonable cause to believe that the components included in the subject entries were of U.S. origin, plaintiff should not be required to pay "withheld duties" on the entries as demanded in the April 18 Customs Service letter.

On September 27, 1979, the Customs Service responded to plaintiff's First Supplemental Petition stating, in a letter by the District Director of Customs at Miami, as follows:

We wish to point out that in our prior decision we did not find that the dice were products of United States origin; rather, we found that ITT had reasonable cause to believe that the transistors imported from Standard Electrica were assembled from dice produced in the United States. Therefore, the loss of revenue attributable to the item 807.00 claims for dice were not included in the determination of the mitigated amount. Nevertheless, the mitigated amount was conditioned upon the payment of the actual loss of $48,153.04, because ITT failed to

---

1. 19 U.S.C. § 1618 (1976) provides in part:
[T]he Secretary of the Treasury, if he finds that such fine, penalty, or forfeiture was incurred without willful negligence or without any intention on the part of the petitioner to defraud the revenue or to violate the law, or finds the existence of such mitigating circumstances as to justify the remission or mitigation of such fine, penalty, or forfeiture, may remit or mitigate the same upon such terms and conditions as he deems reasonable and just, or order discontinuance of any prosecution relating thereto. * * *

supply documentation that all of the dice used in the assembly of the transistors were produced in the United States. * *

Plaintiff's Appendix G, at 2.

The Customs Service mitigated the claim for forfeiture value to $289,662.00 with the provision that the actual loss of revenue of $153,412.00 also be deposited. Customs further advised that if the amounts of $289,662.00 and $153,412.00 were not paid by plaintiff, a claim for forfeiture value in the amount of $10,118,474.00 would be referred to the United States Attorney. Plaintiff paid the amount requested by Customs by October 4, 1979 [2].

Plaintiff filed a Second Supplemental Petition for Mitigation on November 7, 1979, offering to supply additional proof in the form of sworn testimony or otherwise, to establish to the Customs Service's satisfaction that the dice included in the transistors covered by the subject entries were of U.S. origin. This Second Supplemental Petition noted that plaintiff regarded the demand for $48,153.04 as "withheld duties" and as a retroactive assessment of duties in violation of section 514 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1514, and requested a refund of these duties.

Plaintiff argued that it paid the full amount demanded by the Customs Service in its mitigation offer only to avoid referral to the United States Attorney and the institution of a claim for forfeiture value in excess of ten million dollars. Plaintiff contended that since no violation of 19 U.S.C. § 1592 had been found with respect to the approximately sixty-two entries imported in 1969 and 1970 that were the subject of the suit, the Customs Service had no right to require payment of withheld duties on these entries as a condition of mitigating

the claims for forfeiture value with respect to other entries.

The Customs Service responded on January 17, 1980 to the Second Supplemental Petition by refusing to refund the amount of $48,153.04 and advised that no further petition would be considered. By letter dated January 29, 1980, the District Director at Miami forwarded a copy of this last letter in which it noted that it was attaching a copy of the final decision rendered by the Customs Service.

Plaintiff mailed a protest to the District Director at Miami on December 21, 1979, which was marked received by the Customs Service on December 27, 1979. However, the protest was returned by the Customs Service at the port of West Palm Beach, Florida, on or about February 28, 1980 with the explanation: "This matter is not subject to protest." Plaintiff wrote to the Customs Service on March 27, 1980, returning the protest. It was subsequently denied on April 3, 1980, on the grounds that the issue was not subject to protest. Suit was commenced in this court on September 25, 1980. Oral argument was duly held on the parties' cross-motions for summary judgment and defendant's alternative motion to dismiss.

For this court to have subject matter jurisdiction in this case, the plaintiff must have filed a timely protest pursuant to 28 U.S.C. § 1581(a) (Supp. V 1981) [3]. Although a protest was filed in this case, the question is whether or not the decision which the plaintiff protested was one that was protestable at all.

Plaintiff asserts that the payment of "withheld duties" with regard to the sixty-two entries in question was made under duress and therefore was a "charge or exaction" protestable under 19 U.S.C. § 1514(a)(3) [4]. It is the position of the

---

**2.** Although the full amount was paid by the plaintiff, the payment was not submitted by means of one check. Among the checks submitted to total the full amount, a check in the amount of $48,153.04 was submitted.

**3.** 28 U.S.C. § 1581(a) (Supp. V 1981) provides:
The Court of International Trade shall have exclusive jurisdiction of any civil action com-

menced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930.

**4.** 19 U.S.C. § 1514(a)(3) (1976 & Supp. IV 1980) provides:
Except as provided in subsection (b) of this section, section 1501 of this title (relating to voluntary reliquidations), section 1516 of this

plaintiff that the payment of $48,153.04 was a charge or exaction because there was no avenue for avoiding the threatened lawsuit for forfeiture value except by depositing the monies demanded by the government. Plaintiff argues that absent an alternative to the mitigation procedure the payment tendered was made under coercion and compulsion. This court cannot agree with plaintiff's position.

As the defendant points out, the monies paid were part of a settlement in mitigation of penalties assessed upon the entries that are the subject of this action and upon numerous other entries not before this court. Plaintiff voluntarily paid the monies in issue as part of a settlement it requested and negotiated. The plaintiff was free at any time during negotiations with the defendant to decline settlement. Had the plaintiff refused settlement, the defendant, as in any case, could have pursued its legal remedies. It can hardly be argued that the pursuit by the defendant of its legal remedies is tantamount to coercion.

■ Plaintiff has attempted to separate certain entries from the entire settlement because it believed the defendant's position was weak with respect to those entries. However, the sixty-two entries that are the subject of this litigation are part of 805 entries considered in the potential penalty case as well as in the offer by the defendant to settle. There is no indication in the record that the offer to settle, or the final settlement, was severable. The Customs Service accepted plaintiff's payment and in exchange agreed to forego suit for the entire penalty amount. Since plaintiff chose to pay the amount in dispute as an alternative to being sued, this court does not find the defendant compelled payment or that payment was made involuntarily.

In *Carlingswitch, Inc. v. United States*, 85 Cust.Ct. 63, C.D. 4873, 500 F.Supp. 223 (1980), *aff'd*, 68 CCPA 49, C.A.D. 1264, 651 F.2d 768 (1981) (Carlingswitch I), the court discussed whether or not a payment to the Customs Service was voluntary or involuntary and whether or not a "charge or exaction"[3] existed as set forth in 19 U.S.C. § 1514. The plaintiff in *Carlingswitch I* tendered approximately $92,000.00 to the government in connection with a penalty investigation under section 592 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1592, for understating the value of certain shipments of switches, indicator lights and related products. The Customs Service subsequently issued a penalty notice to the plaintiff, and then approximately 18 months later notified the plaintiff that it was remitting the forfeiture claim in full because the claim was barred by the running of the statute of limitations. Plaintiff then filed a protest requesting a refund of the tender, was denied, and suit was instituted in the Customs Court. Plaintiff's argument in *Carlingswitch I* was that by virtue of 19 U.S.C. §§ 1520(a)(3)[5] and

title (relating to petitions by domestic interested parties as defined in section 1677(9) (C), (D), and (E) of this title), section 1520 of this title (relating to refunds and errors), and section 1521 of this title (relating to reliquidations on account of fraud), decisions of the appropriate customs officer, including the legality of all orders and findings entering into the same, as to—

    \*    \*    \*    \*    \*    \*

(3) All charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;

    \*    \*    \*    \*    \*    \*

shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade in accordance with chapter 169 of title 28 within the time prescribed by section 2636 of that title. When a judgment or order of the United States Court of International Trade has become final, the papers transmitted shall be returned, together with a copy of the judgment or order to the appropriate customs officer, who shall take action accordingly.

5. 19 U.S.C. § 1520(a)(3) (1976) provides in part:

The Secretary of the Treasury is authorized to refund duties or other receipts in the following cases:

    \*    \*    \*    \*    \*    \*

*Fines, penalties, and forfeitures.*—Whenever money has been deposited in the Treasury on account of a fine, penalty, or forfeiture which

1514(a)(3) [6], the Customs Service's refusal to refund monies paid in satisfaction of duties amounted to a "charge or exaction" within the meaning of 19 U.S.C. § 1514(a)(3) and jurisdiction existed under 28 U.S.C. § 1582(a)(3) [7]. The Customs Court rejected this argument by the plaintiff and found that 28 U.S.C. § 1582(a)(3) did not confer jurisdiction.

The Customs Court in *Carlingswitch I* determined, and the Court of Customs and Patent Appeals (CCPA) affirmed, that neither an importer's voluntary tender of approximately $92,000.00 to the Customs Service in connection with a penalty investigation for understating the value of certain shipments, nor the Customs Service's subsequent refusal to refund the monies tendered, was an "exaction" for purposes of establishing jurisdiction over an importer's action to recover the voluntarily tendered funds. It was stated by Judge Maletz that the tender was made by the plaintiff "on its own initiative and without request or demand by Customs in order to limit its potential penalty liability by complying with the 'voluntary disclosure' practice of Customs." 85 Cust.Ct. at 65, 500 F.Supp. at 226.

In evaluating whether a charge or exaction existed pursuant to 19 U.S.C. § 1514, the court in *Carlingswitch I* looked to the plain meaning of the word "exaction", and noted definitions from The Random House Dictionary, Webster's Dictionary, and Black's Law Dictionary. The court concluded with the aid of these definitions that "[a]t the very least, to constitute an 'exaction' under section 514(a)(3), there would have had to have been some compulsion on the part of Customs requiring plaintiff to

have paid the monies." 85 Cust.Ct. at 66, 500 F.Supp. at 227.

In the case at hand, the amount paid by ITT was a settlement amount arrived at and agreed upon by the parties. It was not in and of itself a fine, penalty or forfeiture and was voluntarily paid by the plaintiff in order to avoid suit by the United States. Plaintiff argues that *Carlingswitch I* is easily distinguishable from the case at hand because this case does not involve a protest against a refusal to refund an amount deposited pursuant to 19 U.S.C. § 1520(a)(3) and does not deal with a voluntary tender prior to the issuance of a penalty notice. This court does not find these distinctions determinative. *Carlingswitch I* is helpful in defining what is a "charge or exaction" within the meaning of 19 U.S.C. § 1514(a)(3) and the parameters of voluntariness in this context.

In the instant case, the record is replete with facts that demonstrate voluntary behavior. The mitigation proceedings, during which plaintiff was always represented by counsel, lasted over 1 year with plaintiff submitting many petitions. More importantly, plaintiff, as the result of these petitions, was successful in achieving many significant reductions in the penalties assessed. Plaintiff was only advised that the negotiations were about to come to a close when defendant was about to lose its right to sue due to the running of the statute of limitations.

As Judge Maletz noted in *Carlingswitch, Inc. v. United States*, 5 CIT ——, Slip Op. 83–13, 560 F.Supp. 46 (1983), *appeal docketed*, No. 83–871 (Fed.Cir. March 14, 1983) (*Carlingswitch II*) [8], "[i]n order for such

---

did not accrue, or which is finally determined to have accrued in an amount less than that so deposited, or which is mitigated to an amount less than that so deposited or is remitted.

**6.** *See supra* note 4.

**7.** 28 U.S.C. § 1582(a)(3) (1976) (amended 1980) provides in part:

(a) The Customs Court shall have exclusive jurisdiction of civil actions instituted by any person whose protest pursuant to the Tariff

Act of 1930, as amended, has been denied, in whole or in part, by the appropriate customs officer; where the administrative decision, including the legality of all orders and findings entering into the same, involves: * * * all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury; * * *.

**8.** *Carlingswitch II* is identical in subject matter to *Carlingswitch I,* which was dismissed for lack of subject matter jurisdiction. However, the decision in *Carlingswitch I* was prior to the

payments to be truly voluntary, they must be done 'by design or intentionally or purposely or by choice or of one's own accord or by the free exercise of the will.'" 5 CIT at ——, Slip Op. 93–13 at 10, 560 F.Supp. at 49 (quoting *Smith v. Noble Drilling Co.*, 272 F.Supp. 321, 322, (E.D.La.1967), *aff'd*, 412 F.2d 952 (5th Cir.1969)). Since payment in the case at hand was a means of mitigating a claim and optional on the part of the parties, this court can only conclude that the decision to pay the settlement amount was by the exercise of free will and not by compulsion on the part of the defendant.

Having determined that the plaintiff in this case acted voluntarily and without compulsion from the Customs Service, a charge or exaction cannot be said to exist under 19 U.S.C. § 1514(a)(3) for purposes of establishing subject matter jurisdiction in this court. Therefore, although a protest was filed in this case, the protest was inappropriate because the settlement decision was not a protestable decision, and jurisdiction cannot be said to exist under 28 U.S.C. § 1581(a).

■ Finally, plaintiff has asserted, at a late point in the litigation and seemingly as an afterthought, that if this court does not have jurisdiction under 28 U.S.C. § 1581(a), it must have jurisdiction under 28 U.S.C. § 1581(i) (Supp. V 1981)[9]. This court is not persuaded that this is the case. The theory that 28 U.S.C. § 1581(i) can be used to create a cause of action where one does not otherwise exist has been repeatedly reject-

ed. *See United States v. Uniroyal, Inc.*, 69 CCPA ——, 687 F.2d 467, 472 (1982); *Montgomery Ward & Co. v. Zenith Radio Corp.*, 69 CCPA ——, 673 F.2d 1254, 1261 (1982). While pursuant to 28 U.S.C. § 1581(i)(4) this court has jurisdiction over the administration and enforcement with respect to matters referred to in paragraphs (1)–(3) and subsections (a)–(h) of 28 U.S.C. § 1581, plaintiff has failed to demonstrate why this court should exercise such jurisdiction in this case.

## CONCLUSION

Given this court's determination that it is without subject matter jurisdiction in this matter, defendant's motion to dismiss must be, and hereby is, GRANTED.

It is so ordered.

---

effective date of 28 U.S.C. § 1581(i) (Supp. V 1981) and the enactment of the Customs Court Act of 1980. Plaintiff moved, in *Carlingswitch II*, alleging jurisdiction under 28 U.S.C. § 1581(i). The court rejected this assertion, citing *Montgomery Ward & Co. v. Zenith Radio Corp.*, 69 CCPA ——, 673 F.2d 1254 (1982), noting the legislative history, and concluding that new causes of action cannot be created under 28 U.S.C. § 1581(i). 5 CIT at ——, Slip Op. 83–13 at 7, 560 F.Supp. at 48.

**9.** 28 U.S.C. § 1581(i) provides:
(i) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)–(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall

have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—
(1) revenue from imports or tonnage;
(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue.
(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than protection of the public health or safety; or
(4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.