GENERAL MOTORS
CORPORATION, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 77–11–04746.

United States Court of
International Trade.

Aug. 20, 1986.

Barnes, Richardson & Colburn (James S. O'Kelly, New York City, on motion), for plaintiff.

Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office (Saul Davis, New York City, on motion), for defendant.

*Memorandum Opinion and Order*
RE, Chief Judge:

In this action, plaintiff, General Motors Corporation, challenges the imposition of "diversion" duties upon certain merchandise imported from Canada, and described as "dealer radio packs." The "dealer radio packs" consist of fabricated radio compo-

nents which, after importation, are assembled into automotive radios.

Upon entry into the United States, since plaintiff claimed that the radios were "intended for use as original equipment in the manufacture in the United States of a motor vehicle," the Customs Service classified the merchandise under item 685.55 of the Tariff Schedules of the United States (TSUS), as original motor vehicle equipment from Canada. Consequently, it was entered and liquidated free of duty.

After importation, plaintiff notified the Customs Service that the "dealer radio packs" were not being installed during the factory assembly of the automobiles. Instead, the radio packs were installed at the retail level by dealers. Accordingly, the Customs Service, by letter ruling, determined that the imported merchandise was "diverted" from its intended use "in the manufacture in the United States of motor vehicles." Therefore, pursuant to Headnote 2(d)(ii) of Schedule 6, Part 6B, TSUS, the Customs Service assessed "diversion" duties, and required plaintiff to pay "an amount equal to the duty which would have been payable at the time of entry if the Canadian article had not been entered as original motor-vehicle equipment."

Plaintiff protests the assessment and seeks to recover its payment. It contends that, although the radio packs were not installed during the factory assembly of the automobiles, but at the retail level by dealers, they are nevertheless properly classifiable as "original motor-vehicle equipment," free of duty, under item 685.-55 of the tariff schedules.

Defendant contends that the Court lacks subject-matter jurisdiction over this action under 28 U.S.C. § 1582 (1976). In the alternative, defendant contends that diversion duty was properly imposed on the merchandise, and that summary judgment should be granted in its favor. Since the question presented pertains to the proper classification of the imported merchandise, it is the determination of this Court that defendant's motion to dismiss for lack of jurisdiction is denied. *See John V. Carr &*

*Son, Inc. v. United States,* 76 Cust.Ct. 162, 163–64, C.D. 4652, 414 F.Supp. 620, 622 (1976). Plaintiff's motion for summary judgment is denied, and defendant's cross-motion for summary judgment is granted.

The pertinent statutory provisions of the Tariff Schedules are as follows:

Schedule 6, Part 5:

685.55 Any article described in the foregoing items 685.11 to 685.50, inclusive, if Canadian article and original motor-vehicle equipment (see headnote 2, Part 6B, Schedule 6) .......................... Free.

Schedule 6, Part 6, Subpart B, Headnote 2 (emphasis added):

2. Motor Vehicles and Original Equipment Therefor of Canadian Origin.

(a) The term "original motor-vehicle equipment", as used in the schedules with reference to a Canadian article . . . means such a Canadian article which has been obtained from a supplier in Canada under or pursuant to a written order, contract, or letter of intent of a bona fide motor-vehicle manufacturer in the United States, and which is a fabricated component intended for use as original equipment in the manufacture in the United States of a motor vehicle . . . .

. . . .

(d) If any Canadian article accorded the status of original motor-vehicle equipment is not so used in the manufacture in the United States of motor vehicles, such Canadian article or its value . . . shall be subject to forfeiture, unless at the time of the diversion of the Canadian article the United States Customs Service is notified in writing, and, pursuant to arrangements made with the Service—

(i) the Canadian article is, under customs supervision, destroyed or exported, or

(ii) duty is paid to the United States Government in an amount equal to the duty which would have been payable at the time of entry if the Canadian article had not been entered as original motor-vehicle equipment.

The following facts are not in dispute. Plaintiff is a "bona fide motor vehicle manufacturer in the United States," and is the importer of record of merchandise that was entered and liquidated duty-free under item 685.55, TSUS. The imported merchandise

consists of various fabricated radio components which, after importation, are assembled into automotive or "dealer" radio packs. A radio pack is a fully assembled, individually packaged radio, which is designed to be installed at the retail level by the dealer, rather than at the factory.

After liquidation of the merchandise, plaintiff notified the Customs Service that the radio packs were to be installed by plaintiff's franchised retail dealers as original equipment in new cars, and requested a ruling on the status of the radio packs. The Customs Service, in a letter ruling issued by the Director of the Classification and Value Division, ruled that the radio packs were not used as original motor-vehicle equipment, but had been "diverted" within the meaning of Schedule 6, Part 6B, Headnote 2(d), TSUS, which codifies section 404(d) of the Automotive Products Trade Act of 1965 (APTA), Pub.L. 89–283, 79 Stat. 1016, 1022–23. Hence, plaintiff paid an amount equal to the duty which would have been payable at the time of entry if the Canadian articles had not been entered as original motor-vehicle equipment. Plaintiff protested the payment and, by this action, seeks to recover the diversion duties.

Plaintiff contends that this Court has jurisdiction under 28 U.S.C. § 1582(a)(2) and (3) (1976). It also maintains that the decision of Customs, which held that the merchandise was diverted within the meaning of Schedule 6, Part 6B, Headnote 2(d)(ii), is erroneous.

Two questions are presented. The first, a question of first impression for the Court of International Trade, is whether the Court has jurisdiction over plaintiff's protest of the imposition of "diversion" duty. The second is whether, within the meaning of the relevant tariff schedules, the dealer-installed radios fall within the statutory definition of original motor-vehicle equipment.

### Jurisdiction

This action was originally filed in the United States Customs Court, predecessor of the United States Court of International Trade. The jurisdictional provisions applicable at the time the action was commenced provided:

> exclusive jurisdiction of civil actions instituted by any person whose protest pursuant to the Tariff Act of 1930, as amended, has been denied, in whole or in part, by the appropriate customs officer, where the administrative decision ... involves: ... (2) the classification and rate and amount of duties chargeable; (3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury.

Customs Court Act of 1970 § 110, 28 U.S.C. § 1582(a) (1976) (amended 1980 & 1984). A protest of a decision, order, or finding must be filed within 90 days after, but not before, notice of liquidation or the date of the decision to which protest is made. Tariff Act of 1930 § 514, 19 U.S.C. § 1514(c)(2) (1982).

In its complaint, plaintiff alleges that a challenge to the validity of diversion duties is within the jurisdiction of this Court pursuant to 28 U.S.C. § 1582(a)(2) and (3). Defendant, however, contends that this Court lacks jurisdiction over the present case because: (1) the payment of diversion duties is not a cognizable cause of action under either section 1582 or section 1514, (2) the payment of diversion duties by the plaintiff is not a charge or exaction, (3) the action protested by plaintiff was the result of a settlement between plaintiff and defendant, (4) plaintiff failed to file a timely protest, and (5) plaintiff failed to notify Customs in writing at the time of the diversion as required under Headnote 2 to Section 6, Part 6B.

It is established that, when a jurisdictional issue is raised, plaintiff has the burden to prove that jurisdiction exists. *See, e.g., Lowa, Ltd. v. United States,* 5 CIT 81, 83, 561 F.Supp. 441, 443 (1983), *aff'd,* 724 F.2d 121 (Fed.Cir.1984). It is also established that there is a "strong presumption that Congress intends judicial review of administrative action." *Bowen v. Michigan Academy of Family Physicians,* — U.S. —,

106 S.Ct. 2133, 2135, 90 L.Ed.2d 623 (1986); *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967); *see also Suwannee Steamship Co. v. United States*, 70 Cust.Ct. 327, 329, 354 F.Supp. 1361, 1363 (1973). Indeed, it may be said that judicial review of administrative action "is the rule, and nonreviewability an exception which must be demonstrated." *Barlow v. Collins*, 397 U.S. 159, 166–67, 90 S.Ct. 832, 838, 25 L.Ed.2d 192 (1970).

Defendant contends that plaintiff's payment of diversion duties does not give rise to a cognizable cause of action within the jurisdiction of this Court because the payment of duties is not a protestable "decision of the appropriate customs officer," within the meaning of section 1514(a). Rather, defendant contends that "Customs does not assess diversion duties, it merely accepts or rejects tender offers." Defendant reasons that the payment of the diversion duty is "voluntary" and, therefore, cannot be considered a "charge" or "exaction" within the meaning of section 1514(a)(3). This argument is without merit.

In other contexts, "charges" and "exactions" have been defined as "actual assessments of specific sums of money," other than ordinary customs duties. *See e.g., Alberta Gas Chemicals, Inc. v. Blumenthal*, 82 Cust.Ct. 77, 81–82, 467 F.Supp. 1245, 1249–50 (1979). The relevant statutory provision in this case provides that, if the merchandise has been diverted, duty must be paid in an amount "equal to the duty which would have been payable at the time of entry if the Canadian article had not been entered as original motor-vehicle equipment." This unique provision, which provides for payment of duty if the merchandise is diverted from its intended use as original equipment, is a variant of the "actual use" provisions in the TSUS. *See* United States Tariff Commission, *Report to the Committee on Ways and Means on H.R. 6960, 89th Congress, The Automotive Products Trade Act of 1965* 45 (1965). As a substitute for proof of "actual use," headnote 2(d) provides Customs with an enforcement procedure to ensure that the merchandise is used as original motor-vehicle equipment. *Id.* at 46. That is, the merchandise is subject to forfeiture unless Customs is notified in writing of the "diversion," and, pursuant to arrangements made with the Service, the article is destroyed or exported, or the appropriate duty is paid. *See* Schedule 6, Part 6B, headnote 2(d), TSUS. It is significant to note that, in an informational newsletter, the Customs Service had stated its intent to consider the payment of diversion duty an "exaction," protestable under Section 514 of the Tariff Act. *See* United States Customs Service, *Customhouse Brokers' Pipeline* No. 47, at 2 (1978). In the *Customhouse Brokers' Pipeline*, the Customs Service stated that "[i]f there is a disagreement with Customs over the amount due, the broker/manufacturer may file a protest under the provisions of Section 514, Tariff Act 1930; the duties paid will be considered an exaction." Nevertheless, defendant now asserts that diversion duty is not an exaction.

Defendant maintains that plaintiff's payment of diversion duties was a result of a "settlement" between plaintiff and Customs. It asserts that plaintiff's complaint is an impermissible collateral attack upon the "settlement." Relying on *ITT Semiconductors v. United States*, 6 CIT 231, 576 F.Supp. 641 (1983), defendant contends that the payment of diversion duty is a voluntary payment which is not subject to review by this Court. Defendant's contention is unrealistic and without merit.

In the *ITT Semiconductors* case, plaintiff protested Custom's refusal to refund $48,153.04, which plaintiff had paid as part of a settlement in mitigation of penalties under 19 U.S.C. § 1592. Plaintiff claimed that the payment was a charge or exaction protestable under 19 U.S.C. § 1514(a)(3) because the payment was made under duress. Plaintiff sought to avoid "referral to the United States Attorney and the initiation of a claim for forfeiture in excess of ten million dollars." 6 CIT at 233, 576 F.Supp. at 643. Defendant claimed that plaintiff acted voluntarily, and that the denial of the refund was not subject to protest. The Court concluded that "[t]he amount paid by

ITT was a settlement amount arrived at and agreed upon by the parties." 6 CIT at 236, 576 F.Supp. at 645. Consequently, in the *ITT Semiconductors* case, the Court held that the payment was voluntary, and was not a charge or exaction under 19 U.S.C. §1514(a)(3). Hence, defendant's motion to dismiss for lack of subject matter jurisdiction was granted.

In this case, plaintiff did not "settle" its claim with the Customs Service. Instead, it paid those duties which it was required to pay, pursuant to a specific provision of the Tariff Schedules. The payment of the diversion duty was neither voluntary nor the equivalent of a "settlement."

■ It is clear that the provisions of Headnote 2, Schedule 6, Part 6B, *require* plaintiff to pay diversion duties, pursuant to arrangements made with Customs, in an amount equal to the "duties which would have been payable at the date of entry if the articles had not been entered as original motor vehicle equipment." *See* H.R. Rep. No. 537, 89th Cong., 1st Sess. 13, 28 (1965). The diversion duties were not the result of negotiation between the parties, but were paid in fulfillment of plaintiff's statutory obligation. Surely, plaintiff's compliance with a statutory obligation requiring the payment of duties cannot be viewed as a voluntary act. Hence, the Court holds that the assessment of "diversion" duty is an "exaction" within the meaning of 19 U.S.C. §1514(a)(3).

■ Finally, defendant contends that plaintiff failed to file a timely protest. Defendant asserts that the plaintiff's filing of the protest within 90 days after the *payment* of the diversion duties, rather than within 90 days of the *diversion*, precludes judicial review by this Court. While Headnote 2(d) states that a diversion report must be filed "at the time of the diversion," the established practice of Customs shows that diversion reports were required to be filed on a periodic basis, but no less frequently than annually. Furthermore, it should be noted that the plaintiff disputes that the merchandise was diverted. In addition, in connection with an independent forfeiture investigation under the Automo-

tive Products Trade Act of 1965 (APTA), Customs stated that plaintiff was not obligated to file these reports until the position of Customs was clarified, since "[w]hether or not the radio parts in question qualified under APTA was open to legal interpretation...." Once Customs indicated to plaintiff that it considered the merchandise diverted, plaintiff filed the appropriate diversion reports. Hence, the Court finds that plaintiff timely filed diversion reports within 90 days of the assessment of the diversion duty.

In view of the foregoing, the Court holds that it has jurisdiction over this action. Hence, the Court now must determine whether the installation of the radio packs by retail dealers was a diversion which required the payment of duty.

### The APTA'S Definition of Original Motor-Vehicle Equipment

Should the imported radio packs be denied duty-free status because they were installed by plaintiff's franchised dealers, rather than at plaintiff's assembly plants? Defendant asserts that the language of the statute and the legislative history indicate that dealer-installed radios were not intended to be protected by the modifications to the Tariff Schedules implemented by the Automotive Products Trade Act of 1965 (APTA). In its initial ruling on the status of the imported merchandise under the APTA, the Customs Service stated that it would be "a strained construction to hold that a dealer when installing a radio pack was engaged in the production of automobiles in this country." Plaintiff contends that "[t]he fact that the subject radio parts were installed as completed radio packs at the dealer's premises, rather than at the assembly plant, is not a bar to free entry under APTA."

■ It is a well-established "canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself." *See, e.g., Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *see Chevron U.S.A., Inc. v. National Resources Defense Council, Inc.,* 467 U.S.

837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). If a statute is silent or ambiguous with respect to a particular issue, it is appropriate for the court to accord due deference to the agency's construction of a statute, if it is reasonable and consistent with the congressional will. *See Japan Whaling Ass'n v. American Cetacean Society,* —— U.S. ——, 106 S.Ct. 2860, 2868, 92 L.Ed.2d 166 (1986); *United States v. Riverside Bayview Homes, Inc.,* —— U.S. ——, 106 S.Ct. 455, 461, 88 L.Ed.2d 419 (1985); *Chevron U.S.A., Inc.,* 467 U.S. at 844, 104 S.Ct. at 2782.

The APTA authorized the President to modify the TSUS to permit the duty-free entry of Canadian articles intended to be used as original motor-vehicle equipment. 19 U.S.C. § 2011 (1982). One of the stated purposes of the Act was to provide for the implementation of the Agreement Concerning Automotive Products Between the Government of the United States and the Government of Canada, January 16, 1965, 17 U.S.T. 1372, TIAS No. 6093. *See* Automotive Products Trade Act of 1965 § 102, 19 U.S.C. § 2001 (1982). A purpose of the agreement was to "strengthen the economic relations and expand trade in automotive products between the United States and Canada." *Id.* The APTA defines "original motor-vehicle equipment" as "a Canadian article which has been obtained from a supplier in Canada under or pursuant to a written order, contract, or letter of intent of a bona fide motor vehicle manufacturer in the United States, and which is *a fabricated component intended for use* as original equipment *in the manufacture* in the United States of a motor vehicle...." Automotive Products Trade Act of 1965 § 404, Schedule 6, Part 6B, Headnote 2, TSUS (emphasis added).

To insure that any fabricated components admitted into the United States as "intended for use as original equipment" would be used as intended, headnote 2 established an enforcement procedure. *See* H.R.Rep. No. 537, 89th Cong., 1st Sess. 28 (1965). That is, if the merchandise is diverted from its intended use, it is subject to forfeiture unless, pursuant to arrangements made with the Customs Service, the Canadian article is either 1) destroyed or exported under Customs supervision, or 2) the appropriate duty is paid. *See id.;* Schedule 6, Part 6B, Headnote 2(d), TSUS. The legislative history of the APTA makes clear that the phrase "intended for use as original equipment in the manufacture in the United States of a motor vehicle" was meant by Congress to exclude from duty-free status those items which were not used in the *manufacture* of automobiles. *See* S.Rep. No. 782, 89th Cong., 1st Sess. 19, *reprinted in* 1965 U.S.Code Cong. & Ad.News 3670, 3687–88.

It has been recognized that the "Automotive Products Trade Act is a statute enacted to meet a special and unique problem arising between the United States and Canada." *United Shoe Workers of America v. Bedell,* 506 F.2d 174, 190 (D.C.Cir.1974). The Act was intended to enable domestic manufacturers "to make the most efficient use of their *plants.*" *Id.* (emphasis added). The legislative history confirms that producers of automobiles and parts, not retail sellers of automobiles, would be the affected industry. *See* S.Rep. No. 782, 89th Cong., 1st Sess. 4–5, *reprinted in* 1965 U.S.Code Cong. & Ad.News at 3673–74; 111 Cong.Rec. 22,371 (1965). Also, although not conclusive of legislative intent, statements in the *Congressional Record* indicate that parts sent to dealers would not be considered original equipment. *See* 111 Cong.Rec. 25,518 (1965). This view is implicit in the statements made by the representative of the United States, who requested a waiver pursuant to article XXV of the GATT. *See* GATT, *United States—Imports of Automotive Products,* Basic Instruments and Selected Documents 181, 188–89, GATT Doc. L/2500 (14th Supp. 1966). The representative noted that only vehicles and "original parts, that is, parts for assembly into new vehicles," would be entitled to duty-free treatment. *Id.* at 188.

The legislative history, and the contemporaneous statements of reliable officials, show that the APTA was understood to allow imports of original parts only if the imported parts were used in the manufacture and assembly of motor vehicles. In view of the foregoing, it cannot be said

that it is contrary to the legislative intent for Customs to interpret the APTA as requiring installation of the radios to take place at the factory. Plaintiff's interpretation of the statute would not promote the fundamental goal of the APTA, and would permit widespread importation of fabricated components which could not be documented or verified as being used in the manufacture of motor vehicles. In sum, under the APTA, the Court can find no support for plaintiff's contention that a retail dealer who installs a radio uses the radio in the manufacture of an automobile.

The Court holds that the installation of radio packs at the retail level by dealers, rather than at the manufacturing plant, is not the manufacture of an automobile in the United States within the meaning of Headnote 2, Schedule 6, Part 6B, TSUS. Accordingly, defendant's motion to dismiss for lack of jurisdiction and for failure to state a claim upon which relief may be granted is denied. Plaintiff's motion for summary judgment is denied, and defendant's cross-motion for summary judgment is granted.