**Slip Op. 09–112**

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| GRISEL PADILLA D/B/A <br> G. PADILLA & COMPANY <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | **Before: Gregory W. Carman, Judge** <br><br> Court No. 09-00305 |

[*Defendant's motion to dismiss granted.*]

Peter S. Herrick, P.A. (Peter S. Herrick), for Plaintiff.

Tony West, Assistant Attorney General; Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (David Silverbrand); Christine Henter, United States Department of Commerce, of counsel; Beth Brotman, United States Customs and Border Protection, of counsel, for Defendant.

October 8, 2009

## OPINION

**CARMAN, JUDGE:** This matter is before the Court on Defendant's Motion to Dismiss for lack of subject matter jurisdiction pursuant to USCIT Rule 12(b)(1), and for failure to state a claim upon which relief can be granted, pursuant to USCIT Rule 12(b)(5). For the reasons set forth below, Defendant's motion is granted.

BACKGROUND

Plaintiff is a licensed customs broker operating in San Juan, Puerto Rico. (Complaint ("Compl.") ¶ 2.) In October and November of 2004, Plaintiff was the importer of record for five entries of polyethylene retail carrier bags ("PRCBs") manufactured by King Pac Industrial Co., Ltd. ("King Pac"). (Id. ¶¶ 2, 5.) The PRCBs from Thailand were subject to antidumping duty order A-549-821. (Id. ¶ 1.) At the time of entry, goods manufactured by King Pac were subject to the cash deposit rate of 2.80%, which was the "all others rate" calculated by the Department of Commerce in the final determination of sales at less than fair value in July 2004. (Id. ¶ 6; see also Notice of Amended Final Determination of Sales at LTFV: PRCBs from Thailand, 69 Fed. Reg. 42,419.) Plaintiff made cash deposits for the five entries at the 2.80% cash deposit rate. (Compl. ¶ 7.) In January 2007, at the completion of the first administrative review, King Pac was assigned a firm–specific antidumping duty rate of 122.88%. PRCBs from Thailand: Final Results of Antidumping Duty Administrative Review, 72 Fed. Reg. 1,982 (Jan. 17, 2007). Liquidation of Plaintiff's entries was enjoined while the results of the first administrative review were litigated in Universal Polybag Co., Ltd. v. United States, 577 F. Supp. 2d 1284 (Ct. Int'l. Trade 2008). (See Compl. Ex. B.) The injunction issued in Universal Polybag dissolved by its own terms on October 28, 2008 when the opinion of this court was not appealed. (Id.) On December 1, 2008,

Commerce issued liquidation instructions to U.S. Customs and Border Protection ("Customs"). (Id.) On January 2, 2009, Customs liquidated Plaintiff's five entries at an antidumping duty rate of 122.88%. (Compl. ¶ 10.) Consequently, Plaintiff now owes an additional $92,176.99 in antidumping duties for these five entries, that it asserts it cannot afford to pay. (Id. ¶ 17.)

Plaintiff challenged the liquidation of the five entries at the higher antidumping duty rate by filing a protest with Customs on March 3, 2009. (Id. ¶ 11, Ex. D.) Plaintiff's protest was "denied" by Customs as "not protestable under 19 U.S.C. 1514." (Id. ¶ 12; Ex. E.) Plaintiff sent Customs a letter asking Customs to void its denial of Plaintiff's protest, but Customs declined. (Id. ¶¶ 13, 16, Exs. F, H.) On June 18, 2009, Customs informed Plaintiff that failure to pay the duties owing on these entries may result in sundry consequences and penalties. (Id. Ex. I.) Plaintiff then filed this lawsuit on August 4, 2009.

In its Complaint, Plaintiff advances two "counts." "Count I" seeks a preliminary injunction that "enjoin[s] Customs from carrying out its intentions set forth in Exhibit I . . . , [and] enjoin[s] Customs from denying its protest and application for further review." (Id. ¶¶ 18-19.) "Count II" seeks a writ of mandamus directing Customs "to refer Padilla's cap provision protest to Commerce for a decision." (Id. at 5-6.) Fourteen days after filing its Complaint, which, by the nature of Count I may also

be construed as an application for preliminary injunction, Plaintiff filed a motion for a temporary restraining order. (Pl.'s Corrected Mot. For TRO (Docket # 10).) Defendant has now filed a motion to dismiss Plaintiff's Complaint pursuant to USCIT Rules 12(b)(1) and 12(b)(5). (Def.'s Mot. to Dismiss (Docket #14).)

## JURISDICTION

### I. Parties' Contentions

Plaintiff asserts that this Court has jurisdiction over this case pursuant to 28 U.S.C. § 1581(i)(4). (Compl. ¶¶ 3-4.) Defendant argues that in this case, however, Plaintiff is challenging Customs' denial of Plaintiff's protest, and that the appropriate jurisdictional vehicle for such a case is 28 U.S.C. § 1581(a). (Def.'s Mem. in Supp. of Its Mot. to Dismiss and Opp'n. To Pl.'s Mot. for a TRO and Prelim. Inj. ("Def.'s Br.") 1, 5 (citing Compl. ¶¶ 12, 24, 30).) Defendant claims that "[i]f Padilla had complied with the statutory requirements, this Court would possess jurisdiction to entertain Padilla's challenge to CBP's denial of its protest pursuant to 28 U.S.C. § 1581(a)." (Id. at 6.) Presumably, the statutory requirement to which Defendant refers is the jurisdictional prerequisite that "all liquidated duties, charges, or exactions [need to] have been paid at the time the action is commenced" under § 1581(a). See 28 U.S.C. § 2637(a) (2006). Because Plaintiff did not pay the outstanding duties before commencing this lawsuit (Compl ¶ 17), jurisdiction under § 1581(a) is unavailable. Id.

In response, Plaintiff claims that it "could not challenge CBP's denial of its protest pursuant to 28 U.S.C. § 1581(a) since CBP claims the protest raised a non-protestable issue."  (Pl.'s Mem. In Opp'n. To Def.'s Mot. to Dismiss and Supp. for Pl.'s Mot. for a TRO and Prelim. Inj. ("Pl.'s Br.") 1.)  However, Plaintiff does not offer any explanation as to why a protest "denied" by Customs as "non-protestable" falls outside of this Court's jurisdiction in § 1581(a).  Instead, Plaintiff attempts to characterize its Complaint as "challenging Commerce's liquidation instructions issued on December 1, 2008," and reasserts that § 1581(i) is the correct jurisdictional provision.  (<u>Id.</u> 1-2.)

## II.    <u>Discussion</u>

### A.    **There Is No Jurisdiction Under 28 U.S.C. § 1581(a).**

At the heart of this case is a protest that Plaintiff filed with Customs that was "denied" by Customs as "not protestable."  (<u>See</u> Compl. ¶¶ 11, 12, 13, 16, 19, 27; <u>see also</u> Exs. D (Padilla's protest), E (Customs' denial of the protest).)  This case therefore bears some resemblance to a classic § 1581(a) case, which is brought in this Court "to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930."  28 U.S.C. § 1581(a) (2006).  Plaintiff's protest was not denied under section 515 of the Tariff Act of 1930 (19 U.S.C. § 1515), even though it was marked "denied" by Customs officials; in fact, it was rejected.  The government is therefore not correct in asserting

that § 1581(a) was the appropriate jurisdictional vehicle for Plaintiff to use in bringing this case. (See Def.'s Br. 6.)

Section 515 of the Tariff Act of 1930 is codified at 19 U.S.C. § 1515. This statute explains how Customs shall handle an administrative protest filed with the agency. In pertinent part, the statute provides that "within two years from the date a protest was filed **in accordance with section 1514** of this title . . . [the appropriate customs officer] shall allow or deny such protest in whole or in part." 19 U.S.C. § 1515(a) (2006) (emphasis added). In other words, a protest must be filed "in accordance with section 1514," before it can be denied "in whole or in part" within the meaning of § 1515 and before it can be contested in this Court under 28 U.S.C. § 1581(a). See id.

Section 1514, in turn, specifies that only certain Customs decisions are validly the subject of a protest. See 19 U.S.C. § 1514 (2006); see also Am. Nat'l. Fire Ins. Co. v. United States, 30 CIT 931, 939-40, 441 F. Supp. 2d 1275, 1285 (2006) ("The seven categories listed in § 1514(a) are exclusive, and if Customs' underlying decision does not relate to any of these seven categories, the court may not exercise § 1581(a) jurisdiction over an action contesting Customs' denial of a protest filed against that decision.") (internal quotation omitted). When Plaintiff filed a protest challenging the antidumping duty rate applicable to the five liquidated entries of PRCBs, it was not challenging a protestable decision of Customs. See Mitsubishi Elecs. Am., Inc. v. United States,

44 F.3d 973, 977 (Fed. Cir. 1994) ("Customs actions [in antidumping cases] do not fall within 19 U.S.C. § 1514(a)."). This is because the rote collection of antidumping duties in compliance with instructions from Commerce does not constitute a "decision" of Customs within the meaning of § 1514. Id.; see also, Unipro Foodservice, Inc. v. United States, 32 CIT __ , __ , 577 F. Supp. 2d 1348, 1351-52 (2008) (finding that Customs' compliance with liquidation instructions issued by Commerce is "merely ministerial" and specifically does not fall within the scope of § 1514(a)(3)) (internal quotation omitted). "Thus, without a decision under section 1514(a), [there is no] jurisdiction under section 1581(a)." Mitsubishi, 44 F.3d at 977.

Confusion seems to have arisen in this case because Customs marked the face of the protest as "[**d]enied in full** for the reason checked," and explained only in an attachment to the protest that the issue raised was "not protestable under 19 U.S.C. 1514." (See Compl. Ex. E (emphasis added).) This marking may have led counsel for the government to conclude that the protest had been "denied in full" under section 515 of the Tariff Act of 1930, and that Plaintiff should have brought this case under § 1581(a). (See Def.'s Br. 6.) As explained above, because a protest not filed in accordance with § 1514 can never be "denied in full," it cannot be contested in a § 1581(a) case. When Customs receives a protest that does not raise a protestable issue within the meaning of 19 U.S.C. § 1514, the agency should mark the protest "[r]ejected

as non-protestable."  (See Compl. Ex. E, (Part 18 of CBP form 19); see also Ex. F at 3

(Customs' ADD/CVD handbook excerpt).)  Marking the protest "rejected" sends a clear

signal to all involved that there has been no denial of the protest within the meaning of

19 U.S.C. § 1515, and the protest cannot subsequently be contested in this court under

28 U.S.C. § 1581(a).  Marking rejected protests as denied only fosters confusion among

the parties bringing or challenging such protests, government attorneys defending

against such litigation, and the courts.

**B.     There is No Jurisdiction Under 28 U.S.C. § 1581(i)(4)**

In its Complaint, Plaintiff asserts that this Court has jurisdiction over this case

pursuant to 28 U.S.C. § 1581(i)(4).  (Compl. ¶ 3-4.)  In responding to the government's

motion to dismiss, Plaintiff attempts to characterize its Complaint as "challenging

Commerce's liquidation instructions issued on December 1, 2008."  (Pl.'s Br. 1-2 (citing

Heveafil SDN. BHD v. United States, 23 CIT 447, 449 (1999) (a case in which this court

took jurisdiction over a challenge to Commerce's liquidation instructions under

28 U.S.C. § 1581(i)).)  Because the parties dispute the nature of the action brought by

Plaintiff, the court must first assess the true nature of the complaint.  Cf. Norsk Hydro

Canada, Inc. v. United States, 472 F.3d 1347, 1355 (Fed. Cir. 2006) ("[M]ere recitation of a

basis for jurisdiction, by either a party or a court, cannot be controlling . . . we look to

the true nature of the action in the district court in determining jurisdiction of the

appeal.") (internal quotation omitted).

In Count I of its Complaint, Plaintiff seeks a preliminary injunction against Customs. (Compl. ¶¶ 18-24; see also BACKGROUND supra, at 3-4.) A preliminary injunction is "[a] procedural device which is interlocutory in nature and which is designed to preserve the existing status of the litigants **until a determination can be made on merits** of the controversy." Black's Law Dictionary 1062 (5th ed. 1979) (citation omitted; emphasis added). Because the purpose of a preliminary injunction is to preserve the status quo until the merits of the underlying dispute can be resolved, it is highly irregular for a party to request a preliminary injunction as part of the substantive relief sought in the Complaint itself. Indeed, such an approach is conceptually flawed. The Court therefore construes Count I as an application for preliminary injunction, and not as a substantive cause of action.[1]

In "Count II," Plaintiff asks the Court to grant a writ of mandamus instructing Customs to "refer Padilla's cap provision protest to Commerce for a decision." (Compl. 5-6; see also BACKGROUND supra, at 3-4.) A writ of mandamus is used "to compel performance of [a] ministerial act or mandatory duty **where there is a clear legal right** in plaintiff, **a corresponding duty** in defendant, and **a want of any other**

---

[1]Because the Court is granting Defendant's motion to dismiss for lack of subject matter jurisdiction for the reasons set forth below, the Court does not entertain Plaintiff's applications for preliminary injunction or temporary restraining order.

**appropriate and adequate remedy**." Black's Law Dictionary 866 (5th ed. 1979) (citation omitted; emphasis added). A writ of mandamus has been described as "a summary, expeditious, and drastic writ, based on the assumption that the applicant has an immediate and complete legal right to the relief demanded." Syntex Agribusiness, Inc. v. U.S. Int'l Trade Comm'n., 617 F.2d 290, 291 (C.C.P.A. 1980); see also Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 289 (1988) ("[T]he writ of mandamus is an extraordinary remedy, to be reserved for extraordinary situations."). Quite simply, Plaintiff has failed to identify **any** legal basis for its requested writ. Plaintiff has not established why it has a legal right to have its protest forwarded to Commerce, why Customs has a legal obligation to do so, or why there is a want of any other appropriate and adequate remedy. Regardless of the flimsy nature of this petition, the Court determines that the only substantive cause of action brought in Plaintiff's complaint is a naked, unsupported request for a writ of mandamus against Customs.

While it is clear from the preceding evaluation of the Complaint that Plaintiff has not stated a claim upon which relief can be granted, it is axiomatic that the Court must first conduct a threshold inquiry regarding its jurisdiction to hear the case. See Steel Co. v. Citizens for a Better Env't., 523 U.S. 83, 94-95 (1998) ("The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of

the judicial power of the United States and is inflexible and without exception.")
(internal quotations omitted). This Court holds that 28 U.S.C. § 1581(i)(4) does not
provide the court jurisdiction to hear this case. Merely pleading jurisdiction under
§ 1581(i) cannot "be used to create a cause of action where one does not otherwise
exist." ITT Semiconductors v. United States, 6 CIT 231, 237, 576 F. Supp. 641, 646 (1983).
Plaintiff's failure to set out allegations in the Complaint in a way that "demonstrate why
this court should exercise such jurisdiction in this case" is grounds for dismissal. See id.
at 237-38; see also Almond Bros. Lumber Co. v. United States, 32 CIT __ , __ , 2009 WL
1397182 at *8 (2009) (dismissing for lack of jurisdiction under § 1581(i) on account of the
plaintiff's failure to plead sufficient facts to persuade the court that jurisdiction was
appropriate). For the foregoing reasons, then, Plaintiff's Complaint is dismissed for lack
of subject matter jurisdiction pursuant to USCIT Rule 12(b)(1).

The Court notes that Plaintiff is correct in asserting in its response papers that
this court has jurisdiction under 28 U.S.C. § 1581(i)(4) to consider a lawsuit brought
under the Administrative Procedure Act to challenge Commerce's liquidation
instructions, even after the entries in question have been liquidated. See Shinyei Corp.
of Am. v. United States, 355 F.3d 1297, 1312 (Fed. Cir. 2004). However, the Court finds
nothing in the Complaint that advances such a claim.

The Court additionally notes the questionable basis of Plaintiff's underlying

grievance with the government. Plaintiff asserts that the so-called "cap provision" found in 19 U.S.C. § 1673f(a) applies to its 5 entries of PRCBs made in October and November of 2004, and that this provision limits the collection of antidumping duties on those entries to the 2.80% cash deposit rate calculated during the investigation. (Compl. ¶ 22.) It appears that Plaintiff has misapprehended the operation of the cap provision. The statute reads:

> If the amount of a cash deposit, or the amount of any bond or other security, required as security for an estimated antidumping duty under section 1673b(d)(1)(B) of this title is different from the amount of the antidumping duty determined under an antidumping duty order published under section 1673e of this title, then the difference for entries of merchandise entered, or withdrawn from warehouse, for consumption before notice of the affirmative determination of the Commission under section 1673d(b) of this title is published shall be--
>
> > (1) disregarded, to the extent that the cash deposit, bond, or other security is lower than the duty under the order, or
> > (2) refunded or released, to the extent that the cash deposit, bond, or other security is higher than the duty under the order.

19 U.S.C. § 1673f(a) (2006). An explanation of this admittedly complex statute was expertly rendered by the Court of Appeals for the Federal Circuit in <u>Thai Pineapple Canning Indus. Corp. v. United States</u>, 273 F.3d 1077 (Fed. Cir. 2001).

> Once Commerce makes a preliminary determination that merchandise is being sold in the United States at less than fair value, Commerce orders the posting of a cash deposit or bond for each entry of merchandise at a rate based on the preliminary estimated dumping margin. 19 U.S.C. § 1673b(d)(1)(B) (1994). After Commerce makes a final determination that the subject merchandise is being sold at less than fair value, <u>id.</u> § 1673d(a), and

> the International Trade Commission makes a final determination that an industry is materially injured, <u>id.</u> § 1673d(b), Commerce publishes an antidumping order with a new assessment rate based on the dumping margin determined during Commerce's investigation. <u>Id.</u> § 1673e(a). For entries of merchandise **after Commerce's affirmative preliminary determination and before the Commission's affirmative injury determination**, if the deposit of estimated duty under § 1673b(d)(1)(B) is higher than the duty under the antidumping order, the difference is refunded. 19 U.S.C. § 1673f(a) (Supp. V 1999). On the other hand, if the deposit is lower than the duty under the order, the difference is disregarded. <u>Id.</u> That is, the preliminary estimated duty acts as a "cap" on the duty that can be collected for entries made **between the date of Commerce's preliminary determination and the date of the Commission's injury determination, often referred to as the "cap period."**

<u>Thai Pineapple</u>, 273 F.3d at 1082 (emphasis added).  In this case, it appears that the cap period ran from January 26, 2004 (the date on which Commerce issued its affirmative preliminary determination in the PRCB investigation) to the end of July 2004,[2] when the Commission issued its affirmative injury determination.  Because Plaintiff's entries were made after the end of the cap period, those entries do not appear to be subject to the limitations of 19 U.S.C. § 1673f(a).  Indeed, the statutory scheme seems to contemplate that goods entered at the cash deposit rate after the cap period, but prior to the completion of the first administrative review, are subject to liquidation at an entirely different antidumping rate after the administrative review is complete.  <u>See</u> <u>generally</u>

---

[2]The USITC website indicates that the "End" of the Commission's investigation was July 23, 2004.  <u>See</u> http://www.usitc.gov/trade_remedy/731_ad_701_cvd/investigations/2003/polyethylene_retail_carrier_bags/finalphase.htm (last visited Oct. 8, 2009.)  The same date is listed as the end of the cap period in Commerce's instructions to Customs following the first administrative review.  (<u>See</u> Compl. Ex. B, ¶ 3.)

19 U.S.C. § 1675(a); see also 19 C.F.R. §§ 159.58(a) (requiring liquidation to be suspended "on or after the date of publication of the 'Notice of Preliminary Affirmative Antidumping Determination.'"); 351.213(e)(1)(ii) (explaining that the first administrative review 'will cover . . . entries . . . during the period [of review.]').  As this is precisely the fact pattern alleged by Plaintiff in this case, it appears that Plaintiff may not have a legitimate grievance with the United States at all.

## CONCLUSION

For the foregoing reasons, Plaintiff's Complaint is dismissed pursuant to USCIT Rule 12(b)(1).  Judgment will be entered accordingly.

\_\_/s/ Gregory W. Carman_____
Gregory W. Carman, Judge

Dated: October 8, 2009
New York, NY