**MITSUBISHI ELECTRONICS AMERICA, INC., Plaintiff–Appellant,**

v.

**The UNITED STATES, Defendant–Appellee.**

No. 94–1292.

United States Court of Appeals, Federal Circuit.

Dec. 29, 1994.

Kevin M. O'Brien, Baker & McKenzie, Washington, DC, argued, for plaintiff-appellant. With him on the brief were Thomas P. Ondeck and William D. Outman, II.

John S. Groat, Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued, for defendant-appellee. Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, and Marc E. Montalbine, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, DC, were on the brief, for defendant-appellee. Also on the brief were Stephen J. Powell, Chief Counsel for Import Admin., Berniece A. Browne, Sr. Counsel for Antidumping Litigation and Patrick V. Gallagher, Jr., Atty.–Advisors, Office of Chief Counsel for Import Admin., U.S. Dept. of Commerce, of counsel.

Terence P. Stewart and Wesley K. Caine, Stewart & Stewart, Washington, DC, were on the brief, for amicus curiae Torrington Co.

Before MICHEL and RADER, Circuit Judges, and BENNETT, Senior Circuit Judge.

RADER, Circuit Judge.

The United States Customs Service (Customs) denied Mitsubishi's protest of an antidumping duty rate. The United States Court of International Trade dismissed Mitsubishi's appeal. *Mitsubishi Elecs. Am., Inc. v. United States,* 848 F.Supp. 193, 203 (Ct. Int'l Trade 1994). Mitsubishi appeals the dismissal. Because Mitsubishi sued the Government under the wrong jurisdictional statute and the limitations period had expired under the proper statute, this court affirms.

## BACKGROUND

Mitsubishi Electronics America, Inc. (MELA) imports 64K Dynamic Random Access Memory components (64K DRAMs) from Japan into the United States. The Department of Commerce (Commerce) inves-

tigated these products in response to a petition that alleged dumping margins as high as 94% of the foreign market value. On December 11, 1985, Commerce published a preliminary less-than-fair-value (LTFV) determination for MELA's parent company, Mitsubishi Electric Corporation (MELCO). *64K Dynamic Random Access Memory Components (64K DRAMs) from Japan,* 50 Fed.Reg. 50,-649 (Dep't Comm.1985) (prelim. determ. of sales at LTFV). Because Commerce was unable to read computer tapes from MELA that contained price data, Commerce applied a "best information available" rate. This rate was the 94% margin that domestic manufacturers of 64K DRAMs alleged. Customs thus ordered MELA to post bonds at a rate of 94% on entries of MELCO's 64K DRAMs.

Before making a final LTFV determination, Commerce verified MELA's price data. On April 21, 1986, Commerce published a final 13.43% weighted-average dumping margin for MELCO. *64K Dynamic Random Access Memory Components (64K DRAMs) from Japan,* 51 Fed.Reg. 15,943 (Dep't Comm.1986) (final determ. of sales at LTFV). This reduced MELA's bond rate from 94% to 13.43%.

The International Trade Commission issued its determination of material injury to United States industry on June 6, 1986. Commerce published an antidumping order ten days later. *Antidumping Duty Order; 64K Dynamic Random Access Memory Components (64K DRAMs) from Japan,* 51 Fed.Reg. 21,781 (Dep't Comm. June 16, 1986) (antidumping order). This order required MELA to post cash deposits of 13.43% on later entries of its 64K DRAMs.

Commerce then published the opportunity for interested parties to request administrative review of its antidumping determination. *Antidumping or Countervailing Duty Order, Finding or Suspended Investigation,* 52 Fed. Reg. 21,338 (Dep't Comm.1987) (opport. to request admin. review). The first review period ran from December 11, 1985 to May 31, 1987. The notice stated that if no party sought review by June 30, 1987, Commerce would instruct Customs automatically to assess duties under 19 C.F.R. § 353.53a(d)(1) (1987). *Id.*

Only one company, Motorola, requested review. It later withdrew that request. Without a review request, Commerce automatically assessed antidumping duties. For entries of 64K DRAMs between the preliminary and final LTFV determinations, Commerce assessed duties of 94% on MELA. For entries on or after the effective date of Commerce's final LTFV determination, April 29, 1986, Commerce assessed duties of 13.43% on MELA. *Mitsubishi,* 848 F.Supp. at 195.

Customs liquidated the entries made during the review period, on October 21, 1988. On January 5, 1989, MELA filed an administrative protest with Customs under 19 U.S.C. § 1514 (1988 & Supp. V 1993). MELA challenged the preliminary assessment of duties at 94%, and the assessment of interest on entries during the review period. Following a memorandum from Commerce, Customs denied MELA's protest of the antidumping duty rate, but granted its protest of the interest assessment.

MELA challenged Customs' denial of its rate protest in the Court of International Trade. MELA sued under 28 U.S.C. § 1581(a) (1988). MELA predicated its suit on the initial section 1514 administrative protest, because section 1581(a) requires exhaustion of such protests prior to a lawsuit.

The Court of International Trade held that section 1514 did not apply to MELA's suit. *Mitsubishi,* 848 F.Supp. at 198. Accordingly, the trial court held that 28 U.S.C. § 1581(i) (1988 & Supp. V 1993), not section 1581(a), provided jurisdiction for MELA's challenge. The court reasoned that section 1581(a) requires a valid section 1514 protest as a predicate, while a suit under section 1581(i) does not. Because a two-year statute of limitations governs section 1581(i) challenges, however, the Court of International Trade barred MELA's claim. *Mitsubishi,* 848 F.Supp. at 198–201. MELA appeals.

## DISCUSSION

The issues on appeal are purely legal. This court reviews them *de novo. Guess? Inc. v. United States,* 944 F.2d 855, 857 (Fed.Cir.1991).

## I.

The first issue on appeal is whether the Court of International Trade had jurisdiction over Mitsubishi's protest under 28 U.S.C. § 1581(a). Section 1581(a) provides: "The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under [19 U.S.C. § 1515 (1988 & Supp. V 1993)]." Section 1515 requires an aggrieved party to file a protest under section 1514, which Customs must either grant or deny, before the party may sue under section 1581(a). *See Nichimen Am., Inc. v. United States,* 938 F.2d 1286, 1291–92 (Fed.Cir.1991).

Section 1514(a) identifies the decisions that are subject to protest:

[D]ecisions of the Customs Service, including the legality of all orders and findings entering into the same, as to

(1) the appraised value of merchandise;

(2) the classification and rate and amount of duties chargeable;

(3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;

(4) the exclusion of merchandise from entry or delivery or a demand for redelivery to customs custody under any provision of the customs laws, except a determination appealable under section 1337 of this title;

(5) the liquidation or reliquidation of an entry, or reconciliation as to the issues contained therein, or any modification thereof;

(6) the refusal to pay a claim for drawback; or

(7) the refusal to reliquidate an entry under section 1520(c) of this title;

shall be final and conclusive upon all persons ... unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade....

19 U.S.C. § 1514(a). Section 1581(a) provides no jurisdiction for protests outside these exclusive categories. *Playhouse Import & Export, Inc. v. United States,* 843 F.Supp. 716, 719 (Ct. Int'l Trade 1994).

MELA's suit falls outside the section 1514(a) categories. Section 1514(a) applies exclusively to Customs "decisions" within the enumerated categories. Section 1514(a) expressly refers to "decisions of the Customs Service." * Section 1514(a) does not embrace decisions by other agencies.

The actions that MELA challenges, however, are not Customs decisions. Commerce, not Customs, calculates antidumping duties. The Trade Agreements Act of 1979 (1979 Act) transferred administration of the antidumping laws from the United States Treasury Department to Commerce. Pub.L. No. 96–39, § 101, 93 Stat. 144, 169–70 (1979). Under the present antidumping law, Commerce calculates and determines antidumping rates. 19 U.S.C. § 1675 (1988 & Supp. V 1993). Commerce conducts the antidumping duty investigation, calculates the antidumping margin, and issues the antidumping duty order. Commerce then directs Customs to collect the estimated duties. *See* 19 U.S.C. § 1673e(a)(1) (1990).

The 1979 Act amended 19 U.S.C. § 1514(a) and (b) to exclude antidumping determinations from the list of matters that parties may protest to Customs. As part of its administration of the antidumping laws under the Trade and Tariff Act of 1984 (1984 Act), Commerce conducts reviews of duty orders when requested. Pub.L. No. 98–573, 98 Stat. 2948 (1984); *Nichimen,* 938 F.2d at 1290–91. The 1979 Act requires Commerce, not Customs, to conduct an administrative review of a duty order before judicial review at the Court of International Trade. *Nichimen,* 938 F.2d at 1291 (citing 28 U.S.C. § 1581(c)).

If an interested party wants Commerce to assess duties at the actual, rather than the estimated, rate of dumping, it may request

---

* At the time of MELA's protest, the statute referred to "decisions of the appropriate Customs officer." 19 U.S.C. § 1514 (1988). The subsequent change in language, however, does not affect this court's analysis.

administrative review of the duties under section 751 of the 1979 Act. If no party makes such a request, Commerce instructs Customs automatically to assess duties at the estimated rate.

Customs merely follows Commerce's instructions in assessing and collecting duties. Customs does not determine the "rate and amount" of antidumping duties under 19 U.S.C. § 1514(a)(2). Customs only applies antidumping rates determined by Commerce. Further, Customs has a merely ministerial role in liquidating antidumping duties under 19 U.S.C. § 1514(a)(5). Customs cannot "modify ... [Commerce's] determinations, their underlying facts, or their enforcement." *Royal Business Machs., Inc. v. United States*, 507 F.Supp. 1007, 1014 n. 18 (Ct. Int'l Trade 1980), *aff'd*, 669 F.2d 692 (CCPA 1982).

In sum, title 19 makes clear that Customs does not make any section 1514 antidumping "decisions." Customs actions regarding dumping do not fall within 19 U.S.C. § 1514(a). Thus, without a decision under section 1514(a), the trial court correctly determined that it lacked jurisdiction under section 1581(a). Therefore, the Court of International Trade lacks section 1581(a) jurisdiction over MELA's suit.

■ By declining to dismiss MELA's initial protest, Customs did not create jurisdiction within the Court of International Trade for MELA's suit. Federal courts may only hear cases as authorized by Congress. *Bell v. New Jersey & Pennsylvania*, 461 U.S. 773, 777, 103 S.Ct. 2187, 2190, 76 L.Ed.2d 312 (1983); *Sampson v. Murray*, 415 U.S. 61, 68, 94 S.Ct. 937, 942, 39 L.Ed.2d 166 (1974). Only actions of Congress, not an administrative agency, can confer subject matter jurisdiction on a federal court. Customs' inaction did not grant the Court of International Trade jurisdiction over this protest.

## II.

■ Because 28 U.S.C. § 1581(a) does not confer jurisdiction on the trial court, MELA alternatively asserts jurisdiction under section 1581(i). Section 1581(i) provides:

In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)–(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

(1) revenue from imports or tonnage;

(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenues;

(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

(4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

28 U.S.C. § 1581(i). Section 1581(i) provides a jurisdictional basis for challenges not covered by other subsections of section 1581. *Cf. Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed.Cir.1987), *cert. denied*, 484 U.S. 1041, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988).

MELA could not invoke the remedies in section 1581(a)–(h). The automatic assessment procedure at issue in this case, however, pertains to the "administration and enforcement" of laws "providing for ... duties." Therefore, according to the language of title 28, the trial court apparently had jurisdiction over this case under section 1581(i)(2), (4).

■ The statute of limitations, however, requires that section 1581(i) actions be brought within two years after accrual of the cause of action. 28 U.S.C. § 2636(i) (Supp. V 1993). MELA commenced its action in the Court of International Trade on February 21, 1992. Thus, to avoid a time bar, MELA must show that its cause of action accrued within the two-year limit.

■ A cause of action accrues when "all events" necessary to state the claim, or fix the alleged liability of the Government, have occurred. *United States v. Commodities Export Co.*, 972 F.2d 1266, 1270 (Fed.Cir.1992),

*cert. denied,* —— U.S. ——, 113 S.Ct. 1256, 122 L.Ed.2d 654 (1993). In other words, a claim accrues when "the aggrieved party reasonably should have known about the existence of the claim." *St. Paul Fire & Marine Ins. Co. v. United States,* 959 F.2d 960, 964 (Fed.Cir.1992).

MELA's claim arises from the automatic assessment of antidumping duties under 19 C.F.R. § 353.53a(d)(1) (1987). This regulation applies once a party's opportunity to request an administrative review expires. Commerce's initial notice allowed MELA to request review through June 30, 1987. Neither MELA nor any other interested party requested administrative review by that time. Section 353.53a(d)(1)'s automatic assessment procedure therefore went into effect on July 1, 1987. The regulation and Commerce's notice informed MELA that Commerce would assess duties on the 64K DRAMs beginning July 1, 1987. *St. Paul,* 959 F.2d at 964. MELA's cause of action accrued, and the statute of limitations began to run, on July 1, 1987 when all the events necessary to state the claim had occurred. *Commodities Export Co.,* 972 F.2d at 1270.

MELA's section 1514(a) protest did not toll the statute of limitations during the pendency of the protest. An administrative proceeding does not toll the limitations period unless the proceeding is a mandatory prerequisite to filing suit. *Omni U.S.A., Inc. v. United States,* 663 F.Supp. 1130, 1133 n. 7 (Ct. Int'l Trade 1987), *aff'd,* 840 F.2d 912 (Fed.Cir.), *cert. denied,* 488 U.S. 817, 109 S.Ct. 56, 102 L.Ed.2d 34 (1988); *Lipp v. United States,* 301 F.2d 674, 675, 157 Ct.Cl. 197 (Ct.Cl.1962), *cert. denied,* 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963). Filing an administrative protest with Customs was not a prerequisite to MELA's suit under 28 U.S.C. § 1581(i). Further, the Court of International Trade properly held that MELA could not make a section 1514 protest as a matter of law. *Mitsubishi,* 848 F.Supp. at 203.

In sum, MELA's misguided pursuit of a protest that Congress did not make available neither tolled the two-year limitations period nor delayed the accrual date for MELA's claim beyond 1987. Therefore, MELA's action in the Court of International Trade, which was filed on February 21, 1992, is time-barred under 28 U.S.C. § 2636(i).

## CONCLUSION

The Court of International Trade lacked jurisdiction over MELA's claim under 28 U.S.C. § 1581(a). The two-year statute of limitations bars MELA's claim under 28 U.S.C. § 1581(i). The Court of International Trade correctly dismissed MELA's claim.

## COSTS

Each party shall bear its own costs.

AFFIRMED.