**SHAKEPROOF INDUSTRIAL PRODUCTS DIVISION OF ILLINOIS TOOL WORKS INC., Plaintiff–Appellant,**

**v.**

**The UNITED STATES and Department of Commerce, Defendants–Appellees.**

**No. 95–1498.**

United States Court of Appeals, Federal Circuit.

Jan. 14, 1997.

[redacted]

Stephen M. Creskoff, Creskoff, Dorman & Hume L.L.P., Washington, DC, argued, for plaintiff-appellant. With him on the brief was Robert T. Hume.

Velta A. Melnbrencis, Assistant Director, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, argued, for defendants-appellees. With her on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director. Of counsel on the brief were Stephen J. Powell, Chief Counsel, Berniece A. Browne, Senior Counsel, and Lucius B. Lau, Attorney–Advisor, Office of the Chief Counsel for Import Administration, Department of Commerce, Washington, DC. Of counsel was Patrick V. Gallagher, Attorney–Advisor, Office of the Chief Counsel for Import Administration, Department of Commerce, Washington, DC.

Before ARCHER, Chief Judge, SCHALL, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

This is an appeal from an order of the Court of International Trade dismissing a complaint filed by appellant Shakeproof Industrial Products. Shakeproof sought to compel the Commerce Department to disqualify a law firm that represented another party in an antidumping review proceeding. The Court of International Trade denied relief on the ground that the law firm's role in the review proceeding did not result in a conflict of interest. We affirm the order of the Court of International Trade dismissing Shakeproof's complaint.

I

In October 1992, the Commerce Department initiated an antidumping investigation of helical spring lock washers from the People's Republic of China and Taiwan. Six months later, Commerce published its preliminary determination in the lock washer investigation, in which it issued a preliminary dumping rate of 128.63 percent for all manufacturers, producers, and exporters from the People's Republic of China. In its final determination in the lock washer investigation, which was published in September 1993, Commerce concluded that the Hangzhou Spring Washer Plant (Hangzhou) was not a state-owned enterprise and was not subject to *de facto* or *de jure* central government control. For those reasons, Commerce concluded that Hangzhou should be assigned a separate, lower antidumping rate.

In November 1994, Commerce initiated the first administrative review of the lock washer antidumping order. Shortly before that administrative review began, the law firm of White & Case entered an appearance on behalf of Hangzhou and filed an application with Commerce for an "APO," *i.e.*, the release of business proprietary information from parties to the antidumping proceeding, subject to an administrative protective order. *See* 19 U.S.C. § 1677f(c).

Shakeproof objected to White & Case's application; one of the reasons for its objection was that a member of the firm, Alan M. Dunn, had served as Assistant Secretary of Commerce for Import Administration at the time the lock washer antidumping investigation began in 1992. In that capacity, Shakeproof argued, Dunn had access to business proprietary information that Shakeproof had submitted in connection with its original antidumping petition. Shakeproof had filed its petition on September 4, 1992, approximately four months before Dunn left his position with the Department of Commerce.

In addition to objecting to the APO application, Shakeproof sought an opinion from the Legal Ethics Committee of the District of Columbia Bar as to whether White & Case was disqualified from representing Hangzhou in the antidumping proceedings because of Dunn's prior employment with the Department of Commerce. In its submission to the Legal Ethics Committee, Shakeproof argued that Dunn had been personally involved in the lock washer investigation while he was at Commerce, and that his firm therefore should be disqualified from representing a private party in connection with any proceedings stemming from that investigation. The Legal Ethics Committee declined to issue an opinion because of its general policy not to give opinions on specific issues involved in litigation.

Meanwhile, Dunn sought legal advice from the Commerce Department's Office of General Counsel as to whether White & Case could represent Hangzhou in the lock washer antidumping proceedings. The Office of General Counsel declined to address the applicability of bar association rules, but concluded (1) that Dunn had not been personally and substantially involved in the lock washer investigation, and (2) that White & Case was not subject to disqualification in the antidumping proceedings on account of Dunn's activities at the Commerce Department.

Dissatisfied with the opinion of the Office of General Counsel, Shakeproof asked for a formal ruling from the Commerce Department on whether White & Case should be disqualified from representing Hangzhou or at least should be excluded from any APO that might be issued in the first administrative review. In response, White & Case argued that Dunn did not personally participate in the original antidumping investigation, that he did not receive proprietary information from any party in connection with that investigation, and that he would not be personally involved in representing Hangzhou in the administrative review proceedings.

Through the Office of General Counsel, the Commerce Department issued a second opinion letter on the disqualification matter. Again, the Department concluded that Dunn had not been personally and substantially involved in the lock washer antidumping investigation and that the federal conflict-of-interest statute, 18 U.S.C. § 207, did not prohibit him or his law firm from representing Hangzhou in the first administrative review or any subsequent administrative reviews of the lock washer antidumping order. Commerce again stated that it had no authority to provide advice on the proper interpretation and application of the District of Columbia Rules of Professional Conduct, and it therefore declined to address Shakeproof's arguments based on those rules.

Shakeproof then filed a complaint in the Court of International Trade, alleging that Commerce had acted arbitrarily and capriciously in several respects: (1) by ruling that it had no authority to interpret or apply the District of Columbia Bar rules; (2) by concluding that Dunn did not "personally and substantially participate" in the lock washer investigation during the time he was with the Department; (3) by continuing to conduct the administrative review of the lock washer order while White & Case served as counsel for Hangzhou; and (4) by refusing to conduct

an independent investigation into Dunn's role in the lock washer investigation. Shakeproof sought a temporary restraining order and a preliminary injunction barring the Commerce Department from allowing White & Case to represent Hangzhou in the lock washer proceedings.

The Court of International Trade denied Shakeproof's motion for a temporary restraining order but directed White & Case to submit affidavits to the court demonstrating compliance with the District of Columbia Rules of Professional Conduct. Dunn and another White & Case attorney submitted affidavits in response to the court's order. In his affidavit, Dunn stated that he did not participate personally and substantially in the original investigation and had not received or reviewed any proprietary information from any party to the investigation either before, during, or after the original investigation. He further represented that he would not participate in any future matters relating to the proceedings before the Commerce Department, impart any information about the lock washer investigation that he might have obtained during his government service, have access to any confidential materials relating to the lock washer proceedings, or share in any fees received by White & Case for its representation of Hangzhou during the lock washer proceedings. Another attorney from White & Case submitted an affidavit representing that Dunn would not participate in or discuss the lock washer proceedings and would not be allowed to view confidential materials or other documents related to the case.

After receiving the affidavits, the Court of International Trade denied Shakeproof's motion for a preliminary injunction and dismissed the complaint. In a brief opinion, the court stated that it was satisfied that Dunn did not participate personally and substantially in the original investigation and that no conflict of interest barred White & Case from representing Hangzhou in the administrative review proceedings.

## II

Pursuant to 28 U.S.C. § 1581(c), which incorporates the provisions of 19 U.S.C. § 1516a(a), the Court of International Trade is authorized to review several kinds of orders in antidumping proceedings. Among the orders that are reviewable are final determinations following periodic reviews of antidumping orders. *See* 19 U.S.C. § 1516a(a)(1)(D).

In addition to granting reviewing authority under 28 U.S.C. § 1581(c), the jurisdictional statute of the Court of International Trade contains a residual provision that gives the court jurisdiction over civil actions against the United States arising out of certain laws, including those providing for antidumping duties. 28 U.S.C. § 1581(i); *see Mitsubishi Elecs. Am., Inc. v. United States*, 44 F.3d 973, 977 (Fed.Cir.1994). Under section 1581(i), the Court of International Trade may conduct review under the general authority of the Administrative Procedure Act, 5 U.S.C. §§ 701–706, but only when review would never be available under one of the other subsections of 28 U.S.C. § 1581, or when the remedy afforded by the other subsection would be "manifestly inadequate." *Miller & Co. v. United States*, 824 F.2d 961, 963, 5 Fed. Cir. (T) 122, 124 (1987); *United States Cane Sugar Refiners' Ass'n v. Block*, 69 C.C.P.A. 172, 683 F.2d 399, 402 n. 5 (1982); *see also United States v. Uniroyal, Inc.*, 69 C.C.P.A. 179, 687 F.2d 467, 475 (1982) (Nies, J., concurring); *Asociacion Colombiana de Exportadores de Flores v. United States*, 717 F.Supp. 847 (Ct. Int'l Trade 1989), *aff'd*, 903 F.2d 1555, 8 Fed. Cir. (T) 126 (1990).

Shakeproof could not invoke section 1581(c) as the basis for judicial review, because the first administrative review of the lock washer antidumping order had not been completed at the time Shakeproof filed its complaint. Shakeproof therefore invoked section 1581(i), the residual provision. Shakeproof sought interlocutory review under that provision on the ground that judicial review after the conclusion of the administrative review would be "manifestly inadequate."

We have serious doubts that judicial review of the disqualification issue would be manifestly inadequate if it were postponed until Commerce's final decision on the first review of the antidumping order. For that reason, we believe there is substantial force to the government's suggestion that Shakeproof's request for judicial review in this case was premature. We need not decide, however, whether the Court of International Trade properly exercised review under 28 U.S.C. § 1581(i). In previous cases, this court has found it unnecessary to decide that issue when it has concluded that the plaintiff was not entitled to relief in any event. *See Asociacion Colombiana de Exportadores de Flores v. United States*, 903 F.2d 1555, 1559, 8 Fed. Cir. (T) 126, 129–30 (1990); *Sharp Corp. v. United States*, 837 F.2d 1058, 1062, 6 Fed. Cir. (T) 63, 67–68 (1988). We follow the same course here. Because we uphold the trial court's dismissal of the action for the reason discussed below, we do not address the contention that judicial review of the disqualification issue should have been postponed until Commerce's final decision on the first administrative review of the lock washer antidumping order.

### III

Shakeproof acknowledges that in order to prevail in this action it must show that the Commerce Department's treatment of the disqualification issue was arbitrary, capricious, or infected by prejudicial legal error. *See* 28 U.S.C. § 2640(e) (Administrative Procedure Act standard of review applies to civil actions brought under 28 U.S.C. § 1581(i)). We reject Shakeproof's argument that Commerce committed prejudicial legal error in its analysis of the disqualification issue, and with respect to Commerce's factual findings we conclude that Shakeproof has failed to overcome the highly deferential "arbitrary and capricious" standard of review.

### A

Shakeproof argues that Commerce committed legal error when it refused to apply the District of Columbia Rules of Professional Conduct to the question whether White & Case should be disqualified as Hangzhou's representative in the antidumping proceedings. In addition, Shakeproof argues that Commerce should have enforced the federal conflict-of-interest statute in this case. Both the Rules of Professional Conduct and the federal conflict-of-interest statute, however, require disqualification or special screening procedures only if the attorney was personally and substantially involved in the matter in question during his prior government service. Accordingly, both of Shakeproof's principal claims of legal error turn on the factual question whether Dunn was personally and substantially involved in the lock washer antidumping investigation during his tenure at the Department of Commerce.

■ After analyzing the parties' submissions and the pertinent documents, the Commerce Department concluded that Dunn was not personally and substantially involved in the lock washer antidumping investigation during his service as a Commerce Department official. While Shakeproof vigorously challenges that finding, we conclude that the finding was not arbitrary or capricious and therefore must be sustained.

In its two opinions addressing the matter, the General Counsel's Office of the Commerce Department focused on the same two documents that Shakeproof relies on in making its conflict-of-interest claim. The first is the document that initiated the lock washer investigation, which was signed by Dunn's deputy. Commerce found that the deputy's exercise of general delegated authority to approve antidumping investigations did not constitute "personal and substantial" involvement in the investigation by Dunn, and we agree.

The second document presents a closer case. In that document, which referred at one point to the lock washer case, Dunn approved a particular method for treating voluntary respondents in non-market economy antidumping cases. The Commerce Department analyzed the document and concluded that it reflected a policy matter of general applicability, not a decision specific to the lock washer case, and that the reference to the lock washer case was merely by way of illustrating the operation of that gen-

eral policy. Accordingly, the Commerce Department concluded that the document did not reflect personal and substantial participation by Dunn in the lock washer case. While there is ground for debate about the proper characterization of that document, we conclude that the Commerce Department's characterization was not arbitrary or capricious. The document is clearly addressed to a general policy issue, and Dunn's contribution to the document—a note added to the bottom of the second page—is likewise directed to the implementation of a general policy, not to the disposition of a particular case. Because we uphold the Commerce Department's findings on Dunn's involvement in the lock washer investigation, we reject Shakeproof's legal contentions under the federal conflict-of-interest statute and the Rules of Professional Conduct.

### B

■ Shakeproof also argues that the Court of International Trade committed procedural error in reaching the conclusion that White & Case did not have a conflict of interest in the antidumping case. In particular, Shakeproof argues that the court should have confined itself to reviewing the Commerce Department's conclusion on the disqualification issue rather than making its own determination after receiving affidavits from Dunn and another White & Case lawyer. While we accept Shakeproof's contention that the proper judicial role in this case was to review Commerce's decision rather than to make a *de novo* determination on the conflict-of-interest question, that legal point does not require that the trial court's judgment be disturbed. Because the proper question for this court is whether the Commerce Department's decision should be upheld under the Administrative Procedure Act standard of review, it is irrelevant that the Court of International Trade chose to accept evidence and make its own determination on the disqualification issue. As we have held, the Commerce Department's factual determination that Dunn did not personally and substantially participate in the lock washer case was not arbitrary or capricious. Once that finding is accepted, there is no legal basis for objecting to the Department's conclusion that

White & Case may represent Hangzhou in the matter and that the firm's APO application may be granted. For that reason, we uphold the order dismissing Shakeproof's complaint.

AFFIRMED.