Slip Op. 03-147

UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                        :
J.S. STONE, INC.,                       :
                                        :
                Plaintiff,              :
                                        :     Before:  WALLACH, Judge
            v.                          :     Court No.:  00-06-00263
                                        :
THE UNITED STATES,                      :
                                        :
                Defendant.              :
                                        :
                                        :
_____ :

[Plaintiff's motion for summary judgment is denied.  Defendant's cross-motion for summary judgment is granted.]

Decided: October 31, 2003

Steven R. Sosnov, of Sosnov & Associates, for Plaintiff.

James A. Curley, Commercial Litigation Branch, Civil Division, Department of Justice.

**OPINION**

**WALLACH, Judge.**

**I.**
**Preliminary Statement**

This matter is before the court on cross-motions for summary judgment pursuant to USCIT R. 56.  Plaintiff, J.S. Stone, Inc. ("Stone"), seeks a refund of antidumping duties for the difference between the cash deposit rate it received and the published rate determined for Sinochem International Chemicals Corp. ("SICC") in Sebacic Acid From the People's Republic of China; Final Results of Antidumping Duty Administrative Review, 63 Fed. Reg. 43,373 (Aug. 13, 1998).  Plaintiff originally brought this action claiming jurisdiction under 28 U.S.C. § 1581(a)

and (i) (1994), but later conceded that the court lacked jurisdiction under § 1581(a).[1]

Defendant challenges the jurisdiction of the court. Additionally, Defendant claims that the Department of Commerce ("Commerce") properly issued antidumping duty instructions to United States Customs Service[2] ("Customs"), which assessed antidumping duties on Plaintiff's entries at the cash deposit rate. For the foregoing reasons, the court has jurisdiction pursuant to 28 U.S.C. §1581(i) and grants Defendant's Cross-Motion for Summary Judgment.

## II.
## Background

On July 19, 1993, Union Camp Corporation filed a petition with Commerce and the ITC, alleging that sebacic acid was being sold at prices below fair market value to the detriment of the domestic industry. See Initiation of Antidumping Duty Investigation; Sebacic Acid from the People's Republic of China, 58 Fed. Reg. 43,339 (Aug. 16, 1993). After investigation, it was determined that Union Camp's allegations had merit and Commerce published an antidumping duty order on sebacic acid from the People's Republic of China ("PRC"). Antidumping Duty Order: Sebacic Acid from the People's Republic of China (PRC), 59 Fed. Reg. 35,909 (July 14, 1994).

Subsequent to the order, Commerce and the ITC conducted administrative reviews for shipments of sebacic acid from the PRC for the periods of July 13, 1994 through June 30, 1995;

---

[1] Plaintiff stated that "[t]he parties are in seeming agreement that there is no jurisdiction under 28 U.S.C. sec. 1581(a). There are no Customs decisions to protest." Plaintiff's Opposition to Defendant's Cross-Motion for Summary Judgment ("Plaintiff's Opposition") at 3.

[2] The United States Customs Service was renamed effective March 1, 2003, and is now organized as the United States Bureau of Customs and Border Protection. See Homeland Security Act of 2002, Pub. L. 107-296, § 1502, 116 Stat. 2135, 2308-09 (2002); Reorganization Plan for the Department of Homeland Security, H.R. Doc. No. 108-32 (2003).

July 1, 1995 through June 30, 1996; July 1, 1996 through June 30, 1997; and July 1, 1997 through

June 30, 1998 ("administrative review periods"). Plaintiff imported sebacic acid from SICC on

October 4, 1996, November 4, 1996, and December 9, 1996, and deposited the estimated

antidumping duties on the entries with Customs. At the time of importation, the Plaintiff's

estimated duty rate was 43.72% *ad valorem*. On July 21, 1997, Commerce published a notice of

opportunity to request administrative review of its antidumping order covering sebacic acid from

the PRC for the period of investigation ("POI") from July 1, 1996, through June 30, 1997.[3]

Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity To

Request Administrative Review, 62 Fed. Reg. 38,973 (July 21, 1997) ("Notice"). Union Camp

filed a petition with Commerce and the United States International Trade Commission ("ITC")

requesting an administrative review of SICC. Additionally, SICC requested an administrative

review.

 As part of the review, SICC was required to report all of its sales of sebacic acid. Plaintiff

---

[3] The notice stated that

> In accordance with section 351.213 of the regulations, an interested party as defined by section 771(9) of the Act may request in writing that the Secretary conduct an administrative review. The Department has changed its requirements for requesting reviews for countervailing duty orders. Pursuant to 771(9) of the Act, an interested party must specify the individual producers or exporters covered by the order or suspension agreement for which they are requesting a review . . . . Therefore, for both antidumping and countervailing duty reviews, the interested party must specify for which individual producers or exporters covered by an antidumping finding or an antidumping or countervailing duty order it is requesting a review, and the requesting party must state why it desires the Secretary to review those particular producers or exporters.

Notice, 62 Fed. Reg. at 38,973.

neither requested an administrative review as an interested party nor participated in the review.[4] SICC did not report its sales to Plaintiff in its questionnaire responses for this administrative review.[5] As a consequence, Commerce did not review SICC's sales of sebacic acid to Plaintiff and SICC's sale prices to Plaintiff were not used by Commerce in computing the .11% dumping rate for SICC.

On April 9, 1998, Commerce published the Preliminary Results of its administrative review in <u>Sebacic Acid From the People's Republic of China; Preliminary Results of Antidumping Duty Administrative Review</u>, 63 Fed. Reg. 17,367 (Apr. 9, 1998) ("Preliminary Results"). On August 13, 1998, Commerce published its final results which covered four exporters including SICC. <u>Sebacic Acid From the People's Republic of China; Final Results of Antidumping Duty Administrative Review</u>, 63 Fed. Reg. 43,373 (Aug. 13, 1998) ("Final Results").

On December 17, 1998, Commerce sent liquidation instructions to Customs. Customs was informed that suspension of liquidation was lifted and entries of sebacic acid sold by SICC to the four importers it identified during the review were to be liquidated at the exporter specific antidumping duty rate. Commerce sent another set of liquidation instructions to Customs on April 28, 1999, instructing Customs to liquidate Plaintiff's entries at the cash deposit or bonding rate.

---

[4] Pursuant to 19 U.S.C. § 1677(9)(A) (1994) an interested party is

>   (A)   a foreign manufacturer, producer, or exporter, or the United States importer, of subject merchandise or a trade or business association a majority of the members of which are producers, exporters, or importers of such merchandise.

[5] The instructions for reporting sales data given to the exporters for July 1, 1995, through June 30, 1996, and July 1, 1996, through June 30, 1997, were the same. <u>See</u> Plaintiff's Motion for Summary Judgment Pursuant to CIT Rule 56 ("Plaintiff's Motion") at 7.

Subsequently, on June 9, 1999, SICC sent a letter to Commerce stating that through its "carelessness" it had forgotten to report sales of sebacic acid to J.S. Stone. Plaintiff's Statement in Response to Defendant's Statement of Material Facts at para. 8. Thereafter, on June 18, 1999, Customs liquidated Plaintiff's three entries and assessed anti-dumping duties at the cash deposit rate of 43.72% *ad valorem*. Commerce then sent a letter to Plaintiff, dated September 2, 1999, explaining why Plaintiff's entries were liquidated at the cash deposit rate. Plaintiff protested the assessment of the antidumping duties under 19 U.S.C. § 1514(a) and its protest was denied.

### III.
### Jurisdiction

Federal courts determine their own jurisdiction. Williams v. Sec'y of Navy, 787 F.2d 552, 557 (Fed. Cir. 1986). A "mere recitation of a basis for jurisdiction, by either a party or a court, cannot be controlling: federal courts are of limited jurisdiction, and may not alter the scope of either their own or another courts' statutory mandate." Id. In this case, the Plaintiff bears the burden of demonstrating that jurisdiction exists because the Defendant challenges the jurisdiction of the court. See Hilsea Inv. v. Brown, 18 C.I.T. 1068, 1070 (CIT 1994). However, it is also incumbent upon the court to independently assess the jurisdictional basis for cases that come before it. See Ad Hoc Comm. v. United States, 25 F. Supp. 2d 352, 357 (CIT 1998).

### A.
### Jurisdiction is Barred Under 28 U.S.C. § 1581(a)

When an interested party wants Commerce to assess the actual rather than the estimated dumping rate, it may request administrative review of the duties under section 751 of the Trade Agreements Act of 1979 ("1979 Act"). See Mitsubishi Elecs. Am. v. United States, 44 F.3d 973, 976-77 (Fed. Cir. 1994). If no request is made, Commerce instructs Customs to assess duties at

5

the estimated rate. However if an administrative review is conducted, Commerce issues its final results and directs Customs to collect the appropriate antidumping duties.

The 1979 Act transferred the administration of the antidumping laws from the United States Treasury Department to Commerce. Comm. To Preserve Am. Color Television v. United States, 706 F.2d 1574, 1577 (Fed. Cir. 1983); Reorg. Plan No. 3 of 1979, §5(a)(1)(c), 44 Fed. Reg. 69,273, 69,275 (Dec. 3, 1979). Customs' role in liquidating antidumping duties is ministerial. Customs has no authority to modify Commerce's determination and may liquidate entries only at the rate set by Commerce. See Royal Business Machs., Inc. v. United States, 1 CIT 80, 87 & n.18 (1980).

Plaintiff protested the assessment of antidumping duties under § 1514(a), and upon denial of the protest, brought suit under § 1581(a) and (i). Section 1514(a) is limited to "decisions of the Customs Service." Because Customs has no authority to modify Commerce's antidumping determination, only in limited circumstances may a plaintiff challenge Customs' imposition of antidumping duties on its entries.[6]

In this case, Commerce sent liquidation instruction to Customs, which then imposed antidumping duties as directed by Commerce as part of its ministerial functions. The court has no

---

[6] For example, in Xerox Corp. v. United States, 289 F.3d 792 (Fed. Cir. 2002) ("Xerox II"), the Federal Circuit held that when a plaintiff's goods are facially outside the scope of an antidumping duty order, a scope determination by Commerce and participation in the antidumping review were unnecessary predicates to a challenge of Customs imposition of antidumping duties. The Federal Circuit explained that where "the scope of the antidumping duty order is unambiguous and undisputed, and the goods clearly do not fall within the scope of the order, misapplication of the order by Customs was properly the subject of a protest" under 19 U.S.C. § 1514(a)(2) and reviewable by the CIT under 28 U.S.C. § 1581(a). Xerox II, 289 F.3d at 795. Thus, misapplication of an antidumping order or the erroneous imposition of antidumping duties by Customs may be protested and suit brought before the court pursuant to § 1581(a). Id.

jurisdiction pursuant to § 1581(a) for it was Commerce's instructions, rather than an independent decision by Customs, which determined the antidumping rate.

**B.**
**Jurisdiction Does Not Lie Under 28 U.S.C. § 1581(c).**

Defendant claims that Plaintiff functionally challenges the results of the administrative review because it contests the application or inapplicability of the determination's results to its entries, a situation, it claims, where jurisdiction is proper only under § 1581(c). Under § 1581(c), the court has exclusive jurisdiction over any civil action commenced under section 516A of the Tariff Act of 1930. Pursuant to 28 U.S.C. § 2631(c) "[a] civil action contesting a determination listed in 516A of the Tariff act of 1930 may be commenced in the Court of International Trade by any interested party who was a party to the proceeding in connection with which the matter arose." Defendant argues that Plaintiff is precluded from challenging the results of the antidumping determination because, although it qualified as an interested party, it did not participate in the administrative proceedings.

The government's position in this case is similar to the claim it made in Xerox Corp. v. United States, 118 F. Supp. 2d 1353, 1354 (CIT 2000) ("Xerox I"). In Xerox I, the government claimed that the only method for parties to determine whether their goods were part of antidumping investigation was through a scope determination. This court stated that

> the ITA has and has had regulations . . . enabling importers like Xerox to file applications to determine whether particular products are within the purview of existing antidumping-duty orders. Also, Congress has provided for judicial review of such determinations . . . . Given, this approach, and the fact that Xerox did not follow it, the defendant takes the position that this court has no jurisdiction to grant any relief – pursuant to section 1581(a) or otherwise.

Xerox I, 118 F. Supp. 2d at 1354.

The CIT agreed with the government's characterization that the plaintiff in Xerox I could have participated in the administrative review in order to ensure that its goods were not facially part of the antidumping determination. However, the Federal Circuit reversed and held that a scope determination was not the sole appropriate method by which a party could challenge Customs' application of a dumping order to its goods when the party believed that Customs had misapplied the antidumping order. See  Xerox II, 289 F.3d at 795.

Similar to the plaintiff in the Xerox cases, J.S. Stone failed to participate in the antidumping review. After the final results of the review were published, the government then made a decision regarding the amount of antidumping duties the parties owed. Commerce then determined which dumping rate applied to Plaintiff's entries and sent liquidation instructions to Customs. Defendant claims that the only method that Plaintiff has of ensuring that the proper dumping rate is applied to its goods is to participate in the antidumping review.

During oral argument, Defendant tried to distinguish the Xerox cases on two points. First, Defendant claimed that the cases were distinguishable because they involved a decision by Customs, not Commerce. Second, Defendant stated that the jurisdiction challenged by the government in the Xerox cases was § 1581(a) and the government had claimed that the only appropriate jurisdiction lay under § 1581(c), while here Plaintiff claims jurisdiction pursuant to § 1581(i) and the government again claims that the only proper jurisdiction lies under § 1581(c).

Because it is the substance and the nature of an action rather than its form that control jurisdiction, see Williams v. Sec'y of Navy, 787 F.2d at 557, these distinguishing factors in no way lessen the basic teaching of Xerox II - that the government mistakenly characterized an action as solely challengeable through an administrative review and subject to § 1581(c) jurisdiction,

8

when another means of challenging the government's actions was available. Plaintiff's claim is thus best characterized as a challenge to Commerce's instructions to Customs, rather than as a challenge to the final results of the review. Like the plaintiff in the Xerox cases, J.S. Stone could have participated in the administrative review as an interested party. That it did not, does not prevent the court from reviewing Commerce's instructions to Customs. Commerce held that SICC's dumping rate did not apply to Plaintiff because it did not participate in the review. Plaintiff's challenge of Commerce's instructions to Customs, and the applicability of the Federal Register results to its entries, takes the matter out of the umbrella of §1581(c) jurisdiction because § 1581(c) covers challenges to the results of antidumping determination. Since the determination is not challenged, Defendant errs in its belief that Plaintiff could only be afforded relief under this subsection.

## C.
### The Court Has Jurisdiction Pursuant to 28 U.S.C. § 1581(i).

The Court of International Trade is an Article III court of limited jurisdiction and "is empowered to offer complete relief in all actions within its jurisdiction except where particular forms of relief are explicitly barred." Krupp Stahl AG v United States 4 CIT 244, 247 (1982). Section 1581(i) gives this court "broad residual authority over civil actions arising out of federal statutes governing import transactions. . . ." Conoco, Inc. v. United States Foreign-Trade Zones Bd., 18 F.3d 1581, 1588 (Fed. Cir. 1994); 28 U.S.C. § 1581(i). Section 1581(i) provides that

> [T]he Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for--
>
> (1) revenue from imports or tonnage;

(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;

(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

(4) administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section.

This subsection shall not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable . . . by the Court of International Trade under section 516A(a) of the Tariff Act of 1930 . . . .

28 U.S.C. § 1581(i).

The legislative history regarding section 1581(i)(4) indicates that this court is not "prohibited from entertaining a civil action relating to an antidumping proceeding so long as the action does not involve a challenge to a determination specified in 516A of the Tariff Act of 1930." House Judiciary Committee in H.R. Rep. No. 96-1235, at 48 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3729, 3760; see Ceramica Regiomontana, S.A. v. United States, 5 CIT 23, 25-28 (1983). Thus, Congress clearly envisioned "occasions when an aspect of an antidumping duty determination might fall within the court's jurisdiction under section 1581(i)." Royal Business Machs., Inc. v. United States, 69 CCPA 61, 74 (1981). However, in order to "invoke jurisdiction under § 1581(i), jurisdiction under the other provisions of § 1581 must be unavailable or manifestly inadequate." Associacao Dos Industriais de Cordoaria e Redes v. United States, 17 CIT 754, 757 (1993); see Juice Farms v. United States, 68 F.3d 1344, 1346 (Fed. Cir. 1995).

Commerce's instructions to Customs to liquidate Plaintiff's entries are not part of the antidumping determination. The court previously illustrated the distinction between a challenge

10

to Commerce's liquidation instructions and a challenge to the antidumping determination in Consolidated Bearings Co. v. United States, 166 F. Supp. 2d 580, 583 (2001).  In Consolidated Bearings, an importer brought an action challenging Commerce's liquidation instructions to Customs. Id.  The court stated that "Commerce's liquidation instructions . . . are not subject to review under subsection 1581(a) because Commerce, not Customs, is the agency responsible for issuing the instructions and determining the amount of antidumping duty to be assessed." Id.  Additionally, "Commerce's liquidation instructions . . . are not reviewable under subsection 1581(c) because they were not part of the final results . . . . Rather, such instructions are issued after relevant final determinations are published." Id.

Pursuant to 19 U.S.C. § 1516a(1) (1999), an interested party who is a party to the proceeding in connection with which the matter arises may commence an action in the United States Court of International Trade by filing concurrently a summons and complaint. Judicial review in antidumping duty proceedings must commence within 30 days after the date of publication in the Federal Register of a final determination by the administering authority or the Commission under section 1675(c)(3) of this title. 19 U.S.C. § 1516a(1).  As the court in Consolidated Bearings explained, Commerce's  liquidation instructions come after the determination and may fall outside the time period that § 1581(c) permits contesting a determination by Commerce. Consolidated Bearings, 166 F. Supp. 2d at 583. Commerce's characterization would effectively prevent parties from seeking redress from mistakes made in its liquidation instructions to Customs when those instructions are sent after the final determination is published and beyond the time permitted for review under § 1581(c).  Were the court to accept the Defendant's argument, parties would be unable to challenge an error in Commerce's

11

liquidation instructions under § 1581(a),(c) or (i). This court declines to so hold. The court has jurisdiction to review Commerce's liquidation instructions to Customs pursuant to 28 U.S.C. § 1581(i).

### IV.
### Applicable Legal Standards

The standard of review applicable to civil actions brought pursuant to § 1581(i) is the same as for those actions brought under the Administrative Procedure Act. See 28 U.S.C. § 2640(e)[7]; Shakeproof Indus. Prods. Div. of Illinois Tool Works, Inc. v. United States, 104 F. 3d

---

[7] Section 2640(e) provides that "In any civil action not specified in this section, the Court of International Trade shall review the matter as provided in section 706 of title 5."

5 U.S.C. § 706 (2000) states that:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall--
>
> (1)     compel agency action unlawfully withheld or unreasonably delayed; and
> (2)     hold unlawful and set aside agency action, findings, and conclusions found to be--
>
> (A)     arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> (B)     contrary to constitutional right, power, privilege, or immunity;
> (C)     in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
> (D)     without observance of procedure required by law;
> (E)     unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
> (F)     unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

12

1309, 1312 (Fed. Cir. 1997). The court reviews an agency's actions to determine whether they were "arbitrary, capricious, or infected by prejudicial legal error." Shakeproof, 104 F.3d at 1313. Under the arbitrary and capricious standard, a reviewing court "must consider whether the decision was based on a consideration of relevant factors and whether there has been a clear error of judgment." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 28 L. Ed. 2d 136, 153, 91 S. Ct. 814, 824-825 (1971).

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCIT R. 56(c). Rule 56 requires that the moving party produce evidence showing lack of any genuine issue of material fact. Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc., 853 F.2d 1557, 1560 (Fed. Cir. 1988). The inferences drawn from the underlying facts are viewed in the light most favorable to the nonmovant. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994, 8 L. Ed. 2d 176, 177 (1962). The court does not "weigh the evidence and determine the truth of the matter," but rather determines "whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202, 212 (1986).

## V.
### Arguments

Plaintiff seeks a refund on the difference between the cash deposit rate it paid on antidumping duties and the rate determined for its exporter SICC. It asks for a money judgment

pursuant to 28 U.S.C. § 2643(a)(1) (2000)[8] rather than reliquidation because its entries have already liquidated.  Plaintiff does not challenge the agency's determination, rather, it argues that the final results published in the Federal Register are all that the law requires to establish its right to a refund of antidumping duties and that this right vested upon publication of the final results. Plaintiff's Motion at 15, 17.  Plaintiff claims that the court is authorized to enter a money judgment against the United States in any civil action commenced under § 1581. 28 U.S.C. § 2643(a)(1). Plaintiff's Reply to Defendant's Supplemental Brief at 5 ("Plaintiff's Supplemental Brief").

Defendant argues that there is no merit to Plaintiff's claims because Plaintiff's entries were not reviewed by Commere during the antidumping determination and therefore the "all others" rate applies to Plaintiff's entries.  Defendant's claim that this court lacks jurisdiction, because the determination was resolved administratively, is resolved by the court's grant of §1581(i) jurisdiction.  Defendant also claims that after liquidation of Plaintiffs entries, no remedy is available to the Plaintiff. Defendant's Supplemental Brief Submitted in Accordance with the Court's Order of June 13, 2003 at 5 ("Defendant's Supplemental Brief").

**VI.**
**Discussion**

**A.**
**Commerce's Liquidation Instructions to Customs and Customs' Liquidation of Plaintiff's Entries Were in Accordance with the Law**

Commerce's liquidation instructions to Customs instructed it to liquidate Plaintiff's entries

---

[8] Section 2643(a)(1) provides that [t]he Court of International Trade may enter a money judgment for or against the United States in any civil action commenced under section 1581 or 1582 of this title."

at the cash deposit or bonding rate.  It had previously instructed Customs to liquidate the entries of the importers identified by SICC at the rate published in the Final Results.  Plaintiff argues that because "[t]here is no statutory or regulatory authority for the Department of Commerce to issue liquidation instructions to the Customs Service that are inconsistent with the final published results of the administrative review," it should have received SICC's published rate.

Defendant "admits there is no statutory or regulatory authority for the Department of Commerce to issue liquidation instructions to the Customs Service that are inconsistent with the final published results of an administrative review, but avers that Commerce did not issue liquidation instructions here that were inconsistent with the final published results." The Government says that having slept on its rights, Plaintiff is precluded from claiming SICC's rate.

Antidumping duties are "assessed when Commerce determines that a class or kind of merchandise is being, or is likely to be, sold in the United States at less than its fair value and the ITC determines that the importation of such merchandise is causing or threatening to cause material injury to a United States industry, or is materially retarding the establishment of an industry in the United States." INA Walzlager Schaefflerkg KG v. United States, 108 F.3d 301, 304 (Fed. Cir. 1997).  An administrative review of an antidumping order is governed by 19 U.S.C. § 1675 (1994), which provides:

> (1) In General
>> At least once during each 12-month period beginning on the anniversary of the date of publication of . . . an antidumping duty order under this subtitle or a finding under the Antidumping Act . . . the administering authority, if a request for such a review has been received and after publication of notice of such review in the Federal Register, shall–
>>
>> (B) review, and determine (in accordance with paragraph (2)), the amount of any antidumping duty, . . .

15

and shall publish in the Federal Register the results of such review, together with notice of any duty to be assessed, estimated duty to be deposited, or investigation to be resumed.

(2) Determination of antidumping duties
    (A) In general
        For the purpose of paragraph (1)(B), the administering authority shall determine–
            (i) the normal value and export price (or constructed export price) of each entry of the subject merchandise, and
            (ii) the dumping margin for each such entry.

    (C) Results of determinations
        The determination under this paragraph shall be the basis for the assessment of countervailing or antidumping duties on entries of merchandise covered by the determination and for deposits of estimated duties.

Id.

Should "an interested party [want] Commerce to assess duties at the actual, rather than the estimated [rate], it may request administrative review of the duties under section 751 of the 1979 Act." Mitsubishi, 44 F.3d at 976-77. Pursuant to the implementing regulation for administrative reviews, 19 C.F.R. 351.212 (1998), Commerce calculates an antidumping assessment rate for each importer of the subject merchandise covered by the review. However, if an antidumping review is not requested, antidumping duties are collected on the unspecified merchandise in the amount of the cash deposit paid at the time of importation, which is published as the "all others" rate in the Federal Register. See Id.; see also Floral Trade Council v. United States, 822 F. Supp. 766, 768-71 (CIT 1993). Section 351.212(c)(2) requires that Commerce instruct Customs to assess antidumping duties in accordance with § 351.212(c)(1), automatic assessment, at the rate equal to the rate equal to cash deposit of estimated antidumping duties required at the time of entry.

Normally, the only means an interested party has of ensuring that it receives the actual

antidumping duty rate is through participation in the antidumping review. Plaintiff did not claim it could not have participated in the administrative review as an interested party; rather it says that "participation [in an administrative review] would be cost prohibitive." Plaintiff's Opposition at 3; Defendant's Reply at 2. If an importer decides not to participate in an administrative review, it bears the risk that Commerce may err in calculating the dumping margin.

The court is not unsympathetic to the plight small or financially strained businesses may face in choosing between participating in a costly administrative review, or choosing not to participate, and thus, risk receiving an uncontestable and perhaps erroneous rate. Small businesses may face a dilemma where they can neither afford to participate in an administrative review nor to pay an erroneous antidumping rate. Nevertheless, the cost-benefit analysis and risk assessment involved is one an importing business must make.

Stone also claims that SICC reported all its sales to Commerce in its 1994-1996 questionnaire responses. Thus, Plaintiff argues Commerce knew of the contract and chose to ignore it. Plaintiff's Statement in Response to Defendant's Statement of Material Facts.

Defendant averred in its Supplemental Reply Brief to Plaintiff's Opposition to the Cross-Motion for Summary Judgment that SICC did not report to Commerce any sales of Sebacic Acid to Plaintiff during the 1994-1995 or 1995-1996 reviews and provided a Declaration by the import compliance specialist, Brandon Farlander, who reviewed the relevant administrative records. See Supplemental Declaration of B. Farlander.

Plaintiff failed to submit competent evidence contravening that Declaration. It alleged, without supporting proof, that Defendant was aware of Plaintiff's entries. Plaintiff's claim is insufficient for the court to find a genuine issue of material fact.

17

The court must consider whether the agency's decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. In its letter dated to Plaintiff, September 2, 1999, Commerce said that "because SICC's sales to J.S. Stone are unreviewed sales, they are subject to automatic liquidation at the cash deposit rate. See 19 C.F.R. section 351.212(c)." The letter further stated that

> Although you claim the respondent would have corrected the problem had the Department advised the respondent of the omission earlier, it is the respondent's obligation, during the course of the proceeding to report all sales. If you wish to avoid automatic assessment or the use of adverse inferences in the future, you or the producer/exporter may request an administrative antidumping review, and follow the procedures to have your sales reviewed by the Department. See 19 C.F.R. section 351.212(c)(2); see also 19 C.F.R. sections 351.102(b) and 351. 301(c)(1).

Defendant's Opposition, Exhibit F.

The statutory framework for administrative reviews anticipates that there will be cases in which a company makes the required cash deposit of antidumping duties on its entries and yet requests no administrative review. When this occurs, the cash deposit rate ultimately becomes the rate at which the company is assessed antidumping duties. See Federal-Mogul Corp. v. United States, 822 F. Supp. 782, 787-88 (CIT 1993). The Federal Circuit has stated that "there is no requirement that assessment rates or duties be determined for each individual entry," Thai Pineapple Canning Industry Corp. v. United States, 273 F.3d 1077, 1086 (Fed. Cir. 2001).

If entries are unknown to Commerce because the exporter failed to disclose them during an antidumping review, Commerce may reasonably determine that the exporter specific rate does not apply. "It is the respondent's obligation to supply Commerce with accurate information," Accai Speciali Terni S.P.A. v. United States, 142 F. Supp. 2d 969, 982 (CIT 2001), and SICC's failure to disclose all of its sales prevented Commerce from including Plaintiff's entries in its

18

calculations.[9]

Indeed, permitting Plaintiff to take advantage of an exporter specific rate when its entries were not reviewed would lead to an absurd result. Defendant points out that were the court to hold for Plaintiff, exporters whose merchandise is subject to an antidumping order and who are respondents in an administrative review might risk withholding sales information from Commerce in order to gain a commercial advantage by awaiting the review's outcome. Should it result in an antidumping duty rate lower than the cash deposit rate, the importer could then come forward and claim that its entries, although not examined by Commerce, were nevertheless entitled to the lower rate. Conversely, if the review result in a higher exporter specific rate than the cash deposit rate, the importer could allow its entries to be deemed liquidated at the cash deposit rate. Statutes must be construed in light of their purpose. See Haggar Co. v. Helvering, 308 U.S. 389, 394, 60 S. Ct. 337, 338-339-40, 84 L. Ed. 340, 344 (1940); see also Sharp Elec. Corp. v. United States, 124 F.3d 1447, 1449 (Fed. Cir. 1997). This result is not one that Congress could have reasonably intended.

Commerce adequately explained its rationale for instructing Customs to liquidate Plaintiff's entries at the cash deposit rate in its September 2, 1999, letter. Stone's failure to participate in the review, and SICC's failure to disclose its sales to Stone, permit Commerce to instruct Customs to liquidate the entries at the cash deposit rate.

---

[9] It may be, that if SICC breached a duty to Stone, an answer may lie in the common law. That question, however, is not now before this court.

19

**B.**
**Plaintiff Received Adequate Notice of Its Opportunity to Participate as an Interested Party
in the Administrative Review**

Plaintiff claims that there was no way an importer could determine from the preliminary or final results published in the Federal Register that it was not included in the antidumping margin determinations. Plaintiff's Reply at 18. To support its claim, Stone cites Transcom, Inc., v. United States, 182 F.3d 876 (Fed Cir. 1999) in which the Federal Circuit explained that "[w]hat the statutory and regulatory notification provisions require is that any reasonably informed party should be able to determine, from the published notice of initiation read in light of announced Commerce Department policy, whether particular entries in which it has an interest may be affected by the administrative review." Id. at 882-83. The court notes that in Transcom Inc., the Federal Circuit also said:

> "The notification requirement in the statute [19 U.S.C. § 1675] and the Customs regulations serves to notify any interested party that the antidumping rate on goods obtained from exporters named in the notice of initiation for an administrative review may be affected by the outcome of that review. Thus, [Plaintiff] and other importers knew at the time of the notice of initiation that any bearings they purchased for importation from one of the named exporters would be subject to a revised antidumping rate for a particular review period. *So apprised, [Plaintiff] or the other importers could participate in the administrative review in an effort to ensure that the calculation of antidumping duties on those products was correct.*"

Id. at 880 (emphasis added).

The notice Plaintiff seeks is not what the law requires. The mistake lies in its argument that it should receive notice that its entries might not be included in the review. Errors may be made during the course of an antidumping review, which is precisely why interested parties are allowed to participate and comment during Commerce's determinations. The law requires that the Plaintiff receive notice of the types of goods and exporters under review. Id. There was notice in

20

the Federal Register that importations from SICC were subject to a revised antidumping rate. Plaintiff had adequate opportunity to participate in the review, but chose not to do so. It did not receive the type of inadequate notice found in Transcom, Inc., where the parties were unable to determine if their entries might be affected by the administrative review. See id. at 882-83.

### C.
### Plaintiff is Not Entitled to Attorney's Fees and Costs Under the Equal Access to Justice Act.

The Equal Access to Justice Act, 28 U.S.C. §2412 (2000) ("EAJA"), "permits judicial award of the costs as specified in 28 U.S.C. § 1920 in any civil action brought by or against the United States" to a prevailing party.[10] United States v. Hitachi Am., Ltd., 101 F. Supp. 2d 830, 832 (CIT 2000). A "prevailing party" is one who "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir. 1978). A prevailing party's application may be denied if "the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(a)(A); United States v. Hitachi, 101 F. Supp. 2d at 832.

Because Plaintiff has not prevailed, its claim for EAJA is denied.

---

[10] "[A] court shall award to a prevailing party other than the United States . . . expenses . . . in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances exist that make an award unjust." 28 U.S.C. § 2412(d)(1)(4).

## VII.
## Conclusion

Plaintiff received proper notice that its entries were subject to administrative review. Commerce adequately explained its reasons for instructing Customs to liquidate Plaintiff's entries at the cash deposit rate in its September 2, 1999, letter. Therefore, Commerce's decision to liquidate Plaintiff's unreported sales at the cash deposit rate after its exporter failed to disclose its sales permits Commerce to instruct Customs to liquidate its entries at the cash deposit rate.

_____
Evan J. Wallach, Judge

Dated: October 31, 2003
       New York, New York